Regelski, Appellant, *v.* F. W. Woolworth Co.

Argued November 18, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Sol Lubin*, with him *Albert N. Danoff*, and *Winkler, Danoff, Lubin and Toole*, for appellant.

*Charles D. Lemmond, Jr.*, with him *J. Thirwall Griffith*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 4, 1967:

Mary Regelski, the plaintiff, was injured when some children, unknown to her, so violently shoved and pushed a swinging door behind her that she fell as she was entering the store of F. W. Woolworth Co. in Nanticoke. She filed suit in trespass against Woolworth averring that the defendant for a long time prior to December 23, 1964, the day of the mishap, had neg-

ligently allowed children to congregate at the doors of the store, threatening the safety of customers.

The defendant filed preliminary objections stating that the plaintiff had not set forth a cause of action because it did not allege any defect in the doors of the defendant's store, nor set forth facts which indicated that the defendant was duty-bound to warn the plaintiff of the acts of the unknown and unnamed children. The court sustained the preliminary objections and dismissed the complaint. The plaintiff appealed.

Since the establishment of the defendant was a place of business open to the public it owed the plaintiff the duty of maintaining the premises in a reasonably safe condition for the contemplated use thereof and for the purposes for which the invitation to customers was extended. *Nettis v. Gen. Tire Co.*, 317 Pa. 204; *Adams v. J. C. Penney Co.*, 411 Pa. 653.

The lower court, in upholding the demurrer, stated that the plaintiff had not pleaded a defect in the door "either known to defendant or ascertainable by reasonable inspection." This is dipping a bucket into an empty well. The plaintiff did not claim that the defendant's doors were defective. She complained that the doors were improperly attended. A cradle with tall sides can be the safest place in the world for the infant sleeping within, but if the cradle is violently rocked, it can become as dangerous as a falling object.

The plaintiff charged the defendant with a failure to prevent its doors from being operated improperly by children, not any particular children, but children. Thus the court's bucket of rationalization goes deeper into the void when the court says that the plaintiff not only did not identify the children who shoved and swung the door roughly but that she did not plead that the overplayful children of the day of the accident were the same children "known to defendant to have done these acts prior to the date of the injury." This is like

saying that the flames which burn down a house were not the ones which sprang from the original burning match. The conduct of the children, as charged by the plaintiff, was a continuous operation, and, like a flood of waters, it doesn't matter whether the house is swept away in the first or the last hour of the inundation. The resulting damage is the same.

The plaintiff specified in her complaint that on December 13, 1964, and "for a long time prior thereto," the defendant allowed children to manipulate the doors of its store with "great force so as to create a perilous and hazardous condition." This was the averment of negligence: failure to maintain safe premises or to notify business visitors of a known danger. "A possessor of land who has knowledge of a dangerous condition is under a duty to warn a visitor of it." (*Yarkosky v. The Caldwell Store, Inc.*, 189 Pa. Superior Ct. 475, 479.)

If tipsy adults emerging from a tavern close by, roughly handled the door of a business place so as to endanger the safety of customers, and the proprietor of the store knew this, he could not claim immunity from liability because the tipsy adults who eventually injured a customer were not the same ones who had abused the doors in the past. It is all a question of reasonableness, which, it is assumed, the law is the quintessence of. Was it reasonable for the defendant to anticipate that, because it did not prevent children from cavorting about the doors, there would be a day when someone would be injured by their boisterous conduct? If it was reasonable for Woolworth to anticipate this and it did nothing to stop the violence attendant upon its swinging doors, it would be liable for the damage done to the eventual person who became the target of the juvenile rough tactics. If it was not reasonable for the defendant to anticipate that children would do what they had been doing in the past,

the store owner would not be liable.  And the tribunal to pass upon such reasonable anticipation in a situation of this kind is not the judge but the jury.

In *Kennedy v. Pennsylvania Railroad,* 32 Pa. Superior Ct. 623, the defendant railroad was held liable for injuries inflicted upon an intending passenger on a railroad station platform by some overenthusiastic students surging toward a train to cheer their football team.  The railroad authorities was required to pay for the failure to foresee what was obvious to the most unprophetic onlooker: ". . . 'if for a considerable time prior to the accident there was a large crowd of students and followers in the station, indulging in such boisterous conduct as manifestly threatened personal injury to passengers, and the defendant could, by the exercise of due vigilance, have ejected this mob or reduced it to order and control, before the plaintiff was injured, then its failure to do so renders it answerable to the plaintiff if she was subsequently injured by a rush of this crowd.' "

The plaintiff in the case at bar charges that the management could not help but have known of the children who played roughly at the doors of the store and it owed a duty to business visitors to warn them of the danger at the entrance if it could not in some manner have reduced the tumultuous juvenile concentration at that point.

In the recent case of *La Sota v. Phila. Trans. Co.,* 421 Pa. 386, we held that the transportation company was liable for injuries done to an autobus passenger by fellow-passengers when the motorman of the vehicle knew that most of the people aboard his bus were riotous and unruly.  If a passenger "exhibits rowdyism degenerating into violence, and the carrier has the capacity and the means to pull the fangs of violent behavior and does not do so, and injury results to an innocent person, the carrier cannot escape tortious re-

sponsibility for failing to use the forceps of prevention."

We said further: "So far as notice to the defendant was concerned, in this case, the defendant had notice throughout the length of the bus trip." In *Martin v. Phila. Gardens, Inc.,* 348 Pa. 232, the plaintiff was injured in a skating rink when a disorderly and visibly intoxicated person collided with him. The negligence alleged was that the defendant with knowledge of the intoxicated person's condition, permitted this patron to skate in the rink. We held that the case was one for the jury.

The plaintiff in this case specifically states that the defendant knew or should have known of the disorder and tumult at the doors caused by the aggregation of roving children. Whether she could prove this averment was a question for the jury to determine, but in affirming a demurrer all facts properly pleaded are admitted to be true. (*Necho Coal Company v. Denise Coal Co.,* 387 Pa. 567). Thus, so far as this appeal is concerned the defendant knew that children ran in and about the premises and that they pushed, shoved and swung doors "with great force so as to create a hazardous condition." This is a charge which cannot be dismissed lightly. A person who decorously enters a business place to spend his money therein has the right to expect he will not be treated at the very portals of the establishment as if he were entering the wild and unrestrained turbulence of the "Crazy House" at an amusement park.

The Court below properly stated that a storekeeper is not an insurer of the safety of its business visitors, but there is a tremendous distance between one end of the swing of the pendulum that the proprietor is not an insurer and the other terminus of the arc which makes him immune from liability for any reason. In between, the clock measures responsibility and liability accord-

ing to the circumstances, all of which are to be determined by a jury.

Judgment reversed with a procedendo.

Mr. Justice JONES and Mr. Justice EAGEN concur in the result.

Mr. Chief Justice BELL dissents.