394 A.2d 546

**Evelyn M. JONES, Appellant,**

v.

**THREE RIVERS MANAGEMENT CORPORATION and Pittsburgh Athletic Company, Inc.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1978.

Decided Nov. 18, 1978.

78

Clyde P. Bailey, Bailey & Bailey, Pittsburgh, for appellant.

Donald W. Bebenek, Michael V. Gilberti, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Evelyn M. Jones brought an action of trespass in the Court of Common Pleas of Allegheny County against appellee Pittsburgh Athletic Company, Inc., holder of the Pittsburgh Pirates baseball franchise, and appellee Three Rivers Management Corporation, a wholly owned subsidiary of the Pittsburgh Athletic Company, Inc., which manages Three Rivers Stadium.[1] A jury found appellees negligent and awarded appellant damages of $125,000. The Superior Court held that appellant failed to establish a prima facie case and reversed and remanded for entry of judgment

---

1. Three Rivers Management Corp. leases the stadium from the City of Pittsburgh and, in turn, sublets the stadium to the Pittsburgh Athletic Company, for Pittsburgh Pirates' ballgames.

notwithstanding the verdict as to both appellees. We granted allowance of appeal and now reverse.[2]

## I

Appellant was injured at Three Rivers Stadium, Pittsburgh, on July 16, 1970, the sport facility's inaugural day. Two interior concourses, or walkways, encircle the stadium on its second level. One concourse, at the outer circumference of the stadium and away from the playing field, houses concessions and restrooms. The other, located behind the seating and scoreboard areas, runs, in part, directly behind and above "right field." Built into the concourse wall above right field, are large openings through which pedestrians may look out over the field and stands. Ramps lead patrons from this second walkway to the seating areas overlooking the field of play. Appellant was standing in this second walkway in the vicinity of one of the large right field openings when she was struck in the eye by a ball hit during batting practice.

Appellant's evidence established that the stadium's structure requires pedestrians interested in looking out onto the playing field to stop or to divert their attention away from the path of the concourse. Appellant testified that as she entered the right field area of the concourse, she directed her attention away from the walkway, approached one of the right field openings and scanned the playing field. She testified that, although she saw some activity on the field, she was not aware that batting practice had begun and did not see home plate.[3] After this stop, she decided not to continue around the walkway, but to walk back to get some food in the "concession" concourse. Appellant turned away from the field of play, started back, and almost immediately heard a cry of "Watch!" As she turned, again, toward the

---

2. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978).

3. The testimony leaves open whether home plate was visible from the place where appellant originally scanned the field.

field, she was struck in the eye by a batted ball. Appellant testified, in addition, that she was a fan of the Pittsburgh Pirates and that she had attended many of the "home" games played at Forbes Field, the Pirates' former stadium. The day she was injured marked her first visit to Three Rivers Stadium. She testified that in Forbes Field patrons were not exposed to batted balls until they had left the walkways and emerged onto ramps in the seating area.

In response to appellant's case, appellees presented no evidence. Instead, they moved for both nonsuits and directed verdicts. The trial court denied the motions and submitted the case to the jury. After the jury's verdict for appellant, the trial court denied appellees' motions for judgments notwithstanding the verdict.

On appeal, a majority of the Superior Court held that appellant failed to meet her burden of proving negligence and that the trial court erred in denying the motions for judgments n. o. v. Judge Spaeth filed an opinion concurring in part and dissenting in part which Judge Hoffman joined. Judge Spaeth agreed with the result as to the Pittsburgh Athletic Co., Inc. He concluded, however, that appellant presented sufficient evidence to reach the jury on the question of appellee Three Rivers Management Corp.'s liability.

## II

Appellees in this appeal argue only that appellant has not established a prima facie case of negligence and that, in the alternative, appellees' defense of assumption of the risk precludes appellant's recovery. Appellees contend that the outcome in this case is controlled by "the universal rule" that batted balls in baseball stadiums do not present an unreasonable risk of harm, and thus, do not create liability in trespass for negligence. Appellant concedes the existence of such a rule, but maintains that its application is limited to injuries which occur during games and regularly scheduled batting practice sessions. Appellant maintains that any injury which occurs on a concourse behind the stands, from which the injured party could not and did not see the source

of danger, and which results from an unusually early batting practice falls outside the scope of the above rule.

This Court has never considered the liability of a baseball stadium operator for damages incurred by a patron in the grandstand or bleachers, struck by a batted ball. There are, however, settled principles which apply to all cases involving a place of amusement for which admission is charged. An operator of such an establishment is not an insurer of his patrons. E. g., *Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 269, 228 A.2d 768, 769 (1967) citing *Haugh v. Harris Bros. Am. Co.*, 315 Pa. 90, 172 A. 145 (1934). Rather, he will be liable for injuries to his patrons only where he fails to "use reasonable care in the construction, maintenance, and management of [the facility], *having regard to the character of the exhibitions given and the customary conduct of patrons invited.*" Id. (emphasis added in *Taylor*) Accord, e. g., *Wood v. Conneaut Lake Park*, 417 Pa. 58, 209 A.2d 268 (1965) and cases cited therein.

Thus, this Court affirmed a directed verdict for a defendant golf club sued on the ground that it was negligent not to provide screening over an area on the golf course where a caddy was exposed to flying golf balls, *Taylor*, supra.[4] The Court granted a judgment n. o. v. to a defendant movie theatre operator where the plaintiff patron alleged no more than that his injury was caused by the lighting conditions, or degree of darkness, ordinarily necessary to show a movie. *Beck v. Stanley Co. of America*, 355 Pa. 608, 50 A.2d 306 (1947), *Beck* unanimously concluded:

"a moving picture operator violates no duty to a patron if, while a picture is being shown, the condition of light is that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen. Also . . . the person who sues on the ground that the condition of light was not equal to that ordinarily used for such purposes should

4. Plaintiff in *Taylor* did not argue that any special duties were created by the employment relation between the parties.

submit some proof of the ordinary usage, thus manifesting the deficiency."

Id., 355 Pa. at 615, 50 A.2d at 310.

And we granted a judgment n. o. v. to an amusement park, holding no liability for injuries allegedly suffered from slipping in the seat of a roller coaster equipped with individual seat belts and large handrails, when the coaster went through a steep turn. *Wood*, supra.

The Superior Court has applied these principles to two baseball cases in which spectators seated in the stands during games have been struck by batted balls. In *Iervolino v. Pittsburgh Athletic Co.*, 212 Pa.Super. 330, 243 A.2d 490 (1968) (allocatur refused), Superior Court directed entry of a judgment n. o. v. where plaintiff contended it was negligent "to invite a patron to a sports event and view a baseball game from a position where she was exposed to a hard projectile traveling 94½ feet in a split second," but did not go on to also establish that exposure to this risk resulted from any deviation from established custom in a baseball stadium.

The Superior Court has also directed entry of a judgment n. o. v. where plaintiff's allegations were "tantamount to a request for a holding that a baseball club must at its peril always have available a seat behind the screen whenever a patron requests one." *Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 (1953).[5]

---

**5.** In *Schentzel*, the Superior Court cited with approval the opinion of the Supreme Court of Minnesota in *Brisson v. Minneapolis Baseball & Athletic Assn.*, 185 Minn. 507, 240 N.W. 903 (1932). *Brisson* held a baseball stadium operator had no duty to provide screened seats for all spectators in the stands exposed to batted balls. Instead, it held the reasonable care standard satisfied when a screen is provided over the most dangerous part of the grandstand, and a reasonable number of people are protected by it.

Similar results have been reached in other jurisdictions considering liability to a patron injured in the stands by a batted ball. E. g., *Crane v. Kansas City Baseball & Exhibition Co.*, 186 Mo.App. 301, 153 S.W. 1076 (1913); *Kavafian v. Seattle Baseball Club Assn.*, 105 Wash. 215, 181 P. 679 (1919); *Quinn v. Recreation Park Assn.*, 3 Cal.2d 725, 46 P.2d 144 (1934); *Brisson v. Minneapolis Baseball Athletic Assn.*, supra; *Lorino v. New Orleans Baseball & Amusement*

■■ Recovery is not granted to those who voluntarily expose themselves to the kind of risks involved in *Iervolino,* supra, and *Schentzel,* supra, by participating in or viewing the activity. We have therefore regularly granted or af-

*Co.,* 16 La.App. 95, 133 So. 408 (1931); *Keys v. Alamo Baseball Co.,* Tex.Civ.App., 150 S.W.2d 368 (1941); *Cates v. Cincinnati Exhibition Co.,* 215 N.C. 64, 1 S.E.2d 131 (1939); *Zeitz v. Cooperstown Baseball Centennial,* 31 Misc.2d 142, 29 N.Y.S.2d 56 (1941); *Stradner v. Cincinnati Reds, Inc.,* 390 Ohio App.2d 199, 316 N.E.2d 924 (1972). See, Prosser, Torts, 2d ed. 445–446.

Although courts are in agreement that a ballpark patron must establish more than injury by a batted ball while in the stands to avoid a dismissal or a directed verdict, they variously describe the rationale for this result. In *Brown v. San Francisco Baseball Club,* 99 Cal.App.2d 484, 487, 222 P.2d 19, 20 (1950), a California court stated:

"In baseball . . . the patron participates in the sport as a spectator and in doing so subjects himself to certain risks necessarily and usually incident to and inherent in the game; risks that are obvious and should be observed in the exercise of reasonable care. This does not mean that he assumes the risk of being injured by the proprietor's negligence, but that by voluntarily entering into the sport as a spectator he knowingly accepts the reasonable risks inherent in and incident to the game."

The court in *Ingersoll v. Onondaga Hockey Club,* 245 App.Div. 137, 281 N.Y.S. 505 (1935), which extended the rule of baseball to hockey, held:

"There was no obligation on the part of respondents to protect appellant against a danger incident to the entertainment which any reasonable spectator could foresee and of which [he] took the risk. The risk of being hit by a baseball or by a puck at a hockey game is a risk incidental to the entertainment and is assumed by the spectator's. Any other rule of law would place an unreasonable burden upon the operator of a ball park or hockey rink. . . . It is argued that this was the first time [appellant] had ever attended such a performance. This does not change the rule of liability so far as respondents are concerned."

The United States Court of Appeals for the Third Circuit noted:

"The risk of being . . . hit, with a chance to catch the foul and keep the ball, is one of the exciting thrills of attendance at the game. The fan cannot recover if the ball hits him instead of his catching it." *Boynton v. Ryan,* 257 F.2d 70 (1958).

Although "assumption of the risk" language is used, the issue is not one of the plaintiff's subjective consent to assume the risks of defendant's negligent conditions, but rather whether defendant was negligent in failing to protect plaintiff from certain risks. As Judge Spaeth noted, "When patrons arrive at the ballpark, they are held to the common knowledge (even if they have not attended a game before) that foul balls are a part of the game, and that most seats will not be screened. . . ." *Jones v. Three Rivers Management Corp.,* 251 Pa.Super. 82, 380 A.2d 387 (1977).

firmed judgments n. o. v. in cases involving places of amusement where the plaintiff alleges no more than injury caused by a risk inherent in the activity in question. Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an "inherent-risk" case to go to the jury. The Superior Court has articulated this principle:

"In this case, plaintiff produced no evidence tending to show that defendant's screening of certain sections of its grandstand deviated from that customarily employed at other baseball parks. The courts of this Commonwealth have adhered to general usage as a test of negligence with respect to methods and appliances employed in business and have held that in the absence of proof by plaintiff that defendant deviated from ordinary standards the question of negligence is not for the jury. See *Mills v. Lit Brothers,* 347 Pa. 174, 32 A.2d 10; *Beck v. Stanley Co. of America,* 355 Pa. 608, 50 A.2d 306; and *Yearsley v. American Stores Co.,* 97 Pa.Super. 275. . . . 'While customary methods do not furnish a conclusive or controlling test of negligence or justify a practice obviously laden with danger, they are nevertheless to be considered as factors of measurement of due care.' "

*Schentzel,* 173 Pa. at 185, 96 A.2d at 184. Evidence that an injured party was exposed in the stands of a baseball stadium to the predictable risks of batted balls, thus, is not sufficient to establish, prima facie, a breach of the standard of care owed a baseball patron by a stadium operator.

Movies must be seen in a darkened room, roller coasters must accelerate and decelerate rapidly and players will bat balls into the grandstand. But even in a "place of amusement" not every risk is reasonably expected. The rationale behind the rule that the standard of reasonable care does not impose a duty to protect from risks associated with baseball, naturally limits its application to those injuries incurred as a result of risks any baseball spectator must and will be held to anticipate. *Goade v. Benevolent and Protective Order of*

*Elks,* 213 Cal.2d 183, 28 Cal.Rptr. 669 (1963), in explaining the difference between the risk of being struck by a batted ball and a flying baseball bat, observes:

"In baseball, a sport often referred to as our 'national pastime,' it has been held that the spectator as a matter of law assumes the risk of being hit by a fly ball. (*Quinn v. Recreation Park Assn.,* 3 Cal.2d 725, 46 P.2d 144; *Brown v. San Francisco Ball Club,* 99 Cal.App.2d 484, 222 P.2d 19.) But when a spectator is hit by a flying baseball bat the doctrine of assumption of the risk is not applied. (*Ratcliff v. San Diego Baseball Club,* 27 Cal.App.2d 733, 81 P.2d 625.) The difference in the treatment of these two baseball spectators is explained by the fact that it is a matter of 'common knowledge' that fly balls are a common, frequent and expected occurrence in this well-known sport, and it is not a matter of 'common knowledge' that flying baseball bats are common, frequent or expected."

Thus, "no-duty" rules, apply only to risks which are "common, frequent and expected," *Goade,* supra, and in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity. Patrons of baseball stadiums have recovered when injured by a swinging gate while in their grandstand seats, *Murray v. Pittsburgh Athletic Co.,* 324 Pa. 486, 188 A. 190 (1936), by tripping over a beam at the top of a grandstand stairway, *Martin v. Angel City Baseball Assn.,* 3 Cal.App.2d 586, 40 P.2d 287 (1935), and by falling into a hole in a walkway, under a grandstand, used to reach refreshment stands, *Louisville Baseball Club v. Butler,* 298 Ky. 785, 160 S.W.2d 141 (1942). In these cases, just as in the "flying baseball bat" case, *Ratcliff v. San Diego Baseball Club,* 27 Cal.App.2d 733, 81 P.2d 625 (1938), the occurrence causing injury was not "a common, frequent and expected" part of the game of baseball. Therefore, there is no bar to finding the defendant negligent. Further, in such cases, there is no burden on the plaintiff to introduce evidence with respect to estab-

lished custom of baseball stadiums.[6] Compare *Schentzel,* supra (plaintiff in "inherent risk" case must demonstrate deviation from established custom to avoid dismissal or directed verdict).

### III

The central question, then, is whether appellant's case is governed by the "no-duty" rule applicable to common, frequent and expected risks of baseball or by the ordinary rules applicable to all other risks which may be present in a baseball stadium. To settle this question, we must determine whether one who attends a baseball game as a spectator can properly be charged with anticipating as inherent to baseball the risk of being struck by a baseball while properly using an interior walkway.

The openings built into the wall over right field are an architectural feature of Three Rivers Stadium which are not an inherent feature of the spectator sport of baseball. They are not compelled by or associated with the ordinary manner in which baseball is played or viewed.[7] The principles underlying our rules barring recovery in amusement facility cases, e. g., *Taylor,* supra (flying golf balls); *Beck,* supra (ordinary degree of darkness in a movie theatre); *Wood,* supra (roller coaster), cannot extend to the kind of risk of harm claimed present here. Like the swinging gate, *Murray,* supra, the dangerous grandstand stairway, *Martin,* supra, and the hole in the floor of the stadium walkway, *Louisville Baseball Club,* supra, these concourse openings simply cannot be characterized as "part of the spectator

---

**6.** The question of whether a risk is properly to be anticipated cannot be answered by looking to whether exposure to such risks is customary in the trade. This would permit defendant/stadium operators to avoid liability for universally prevalent negligent conditions, an undesirable result. Cf. *The T. J. Hooper,* 60 F.2d 737, cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (2d Cir. 1932) (absence of radio on tug negligence, despite custom).

**7.** Indeed, appellees did not challenge appellant's testimony that a patron was protected in the walkways at Forbes Field.

sport of baseball." It, therefore, cannot be concluded that recovery is foreclosed to appellant who was struck while standing in an interior walkway of Three Rivers Stadium. The Superior Court was in error when it extended to appellant, standing in this walkway, the no-duty rule applicable to patrons in the stands. The no-duty rule was improperly applied.[8]

## IV

To determine whether the jury's verdict may stand, it is still necessary to ascertain whether appellant has established that appellees breached the standard of care owed appellant, and that the breach was the proximate cause of appellant's injury. *Murray,* supra, and cases cited therein.

The standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee. Restatement, Second, Torts, §§ 328–343B (1965); see *Davis v. McDowell National Bank,* 407 Pa. 209, 180 A.2d 21 (1962). The trial judge instructed the jury that the appellant was a business invitee, accord Prosser, Torts, 4th ed. 386, and that she was not contributorily negligent.[9] Appellees took no objection to this aspect of the charge, and have raised no objection to the charge on this appeal. Therefore that charge governs the standard of care appellees owed appellant. Cf. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

8. In view of our holding, we need not determine the significance, if any, of the hour at which batting practice was held on the inaugural day of the stadium.

9. The Court instructed:
   "There is no fault in going to a ball game, no fault whatsoever in being in the posture that Miss Jones was in when this occurred. She had a perfect right to be there and was doing nothing wrong.

   \* \* \* \* \* \*

   Miss Jones was a business invitee and of course, those who conduct a business and have people enter and pay for entering are required to exercise a high degree of care in protecting their business invitees."

Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement, Second, Torts §§ 341A, 343, 343A (1965). With respect to dangers which are obvious, the Restatement rule provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement, Second, Torts, § 343A.

Comment f to that section is worthy of note:

"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection."

Thus, an invitee in certain circumstances must be protected even from obvious dangers. *Regelski v. F. W. Woolworth Co.,* 423 Pa. 524, 225 A.2d 561 (1967), citing *Yarkosky v. The Caldwell Store,* 189 Pa.Super. 475, 151 A.2d 839 (1959) (In determining whether invitee's failure to observe a dangerous condition on premises constitutes negligent inattention fact that invitor has diverted the visitor's attention (with eye-catching displays) is an important factor for consideration). Assumption of the risk as a defense requires a demonstration that, in fact, plaintiff knew of the danger created by defendant's negligence and explicitly or implicitly accepted the risks created by this negligence. Restatement, Torts, Second §§ 496A, B, C.

Appellant, as the verdict winner is entitled to have her evidence viewed on appeal in the light most favorable to her; she must be given the benefit of every fact and every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in her favor. E. g., *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *McElhinny v. Iliff,* 436 Pa. 506, 260 A.2d 739 (1970).

Appellant established, inter alia, that she was injured in an interior walkway and that its structure required patrons to turn their attention away from any activity on the field in order to safely navigate the concourse. Plaintiff further testified that when she stopped to look out into the field of play, she saw some activity on the field, but was not aware that batting practice had begun and did not see home plate. It was for the jury to determine the question of appellees' negligence. On this appeal, taking the evidence in the light most favorable to the appellant, as we must, we cannot disturb the jury's verdict.[10]

Order of the Superior Court reversed and judgment for appellant reinstated.

POMEROY, J., did not participate in the consideration or decision of this case.

10. Ordinarily, a lessor not in possession is not liable in trespass to invitees of his lessee. Restatement, Second, Torts, §§ 355, 356. Section 359, however, of the Restatement, Second, Torts creates an exception to this general rule. Section 359 provides:

"Land Leased for Purpose Involving Admission of Public

A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it."

Pennsylvania has followed the Rule of the Restatement. *Yarkosky v. The Caldwell Store,* 189 Pa.Super. 475, 151 A.2d 839 (1959). Under Section 359, liability properly may be imposed on each appellee.