**McClain v. Carney**

*Peter T. O'Malley,* for plaintiff.
*James M. Howley,* for defendant.

GARDNER, *P.J.,* April 1, 1981—A jury trial in the above-captioned matter resulted in a verdict for defendant, and this matter arises on plaintiff's motion for a new trial. The original motion averred that the verdict was against the evidence and its weight, against the law and the charge of the court. It was also alleged that we erred in striking the rebuttal testimony of witness Linda Millard.

Additional reasons subsequently filed alleged several errors in the receipt of evidence and errors in the charge concerning no-fault insurance and a description of plaintiff's duty as to vehicular signals.

In her brief, plaintiff addresses seven of her contentions,[1] and it is to those that this opinion is directed.

---

1. Plaintiff also set forth as a reason for new trial alleged errors by the court in references to no-fault insurance. However, this assertion was completely ignored in plaintiff's brief, and since the matter was submitted on brief only, we regard this as an abandonment of the reason.

Perhaps the reason for plaintiff's brief omission had to do with the fact that any such issue had not been preserved by a specific objection or exception at trial: Dilliplaine v. Lehigh Valley Trust Company, 457 Pa. 255, 322 A. 2d 114 (1974); Pa.R.C.P. 227(b).

I

Plaintiff first argues that the verdict is against the evidence and the weight of the evidence. We disagree.

At trial, plaintiff testified that on July 26, 1976 at 6:00 p.m. she was operating her automobile in a westerly direction on U.S. Route 6 in the borough of Meshoppen, Wyoming County, Pa., and in order to discharge a passenger, she drove onto a wide berm or vacant lot on the north side of the highway, where she came to a complete stop. Plaintiff further testified that while stopped, her vehicle was struck on its left front fender by a tractor-trailer which had previously followed plaintiff's vehicle on the highway.

Defendant testified, on the other hand, that he saw plaintiff drive onto the berm, and as he passed plaintiff's vehicle, that it was 15 feet to his right. Defendant said he felt a slight "bump" and saw that plaintiff had collided with the right rear of his trailer. Defendant described tire tracks attributable to plaintiff's auto as following a course to the left towards the highway and his vehicle, an assertion which, if believed, could support a conclusion that plaintiff had driven into defendant's trailer.

Plaintiff produced her mother who testified that the tire tracks made by plaintiff's car were straight.

This conflicting testimony was submitted to the jury, and obviously, that body accepted defendant's version, a decision which we believe was supported by sufficient evidence, which we must now view in the light most favorable to defendant, the verdict winner: Jones v. Three Rivers Management Corporation, 483 Pa. 75, 394 A. 2d 546 (1978).

Viewed in the required fashion, we find the evi-

dence thoroughly sufficient to support the jury verdict.

## II

Next, plaintiff asserts that the verdict is against the law, but counsel determined that "plaintiff will not expand on that allegation."

We will do the same, except to say that we disagree with plaintiff's counsel.

## III

Plaintiff makes her strongest argument in contending that we erred in striking the testimony of Linda Millard. That testimony came in alleged rebuttal and was to the effect that in a conversation with defendant in the summer of 1976, defendant said that "whether he was right or wrong, nobody was going to sue him and win."

The Millard testimony was preceded, during the cross-examination of defendant, by the following questions put by plaintiff's counsel and answers by defendant:

"Q. Did you ever tell this waitress in discussing the accident or this incident involving Wilma Rimkus, 'Whether I'm right, or whether I'm wrong, nobody's going to sue me and win'?

A. I don't recall making that statement."

Defense counsel vigorously objected to the testimony, in view of the fact that Linda Millard had never been listed as a waitress in response to interrogatories requiring such information[2] and the

2. Notwithstanding plaintiff's argument to the contrary, we think the language of Paragraph 1(c) of the interrogatories addressed to plaintiff by defendant ("those who have any information or knowledge concerning the facts, events, circum-

failure of plaintiff's counsel to include Ms. Millard in the list of witnesses supplied on the pretrial memorandum.

Plaintiff's counsel asserted that he found out about Ms. Millard after the pretrial conference,[3] and Ms. Millard herself testified that she had informed plaintiff of the alleged conversation a month before the trial.

However, the provisions of the sanction amendment to Pa.R.C.P. 4019 appeared to us to require the action which we took:

"(i) A witness whose identity has not been revealed as provided in this chapter *shall* not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief." (Emphasis supplied.)

In this case, we find that plaintiff was the defaulting party, and, if her own witness is to be believed, she knew the possible contribution by Ms. Millard in sufficient time to follow her responsibilities under the Rules of Civil Procedure.

Also, it was obvious that plaintiff's counsel knew of Ms. Millard's alleged conversation before she was called to the witness stand as evidenced by his preparation in posing the question, on cross-

stances, conditions and occurrences surrounding the happening of the accident") to be sufficiently broad to include Ms. Millard so as to allow defendant the benefit of the continuing protection of Pa.R.C.P. 4007.4

3. The pretrial conference was held on September 26, 1980; trial commenced on October 27, 1980.

examination of defendant, quoted earlier in this opinion. Regardless of when he learned of Ms. Millard, his obligation was to immediately report her identity and role to defense counsel. This he did not do, and under the circumstances we felt, and still feel, that application of Rule 4019(i) was proper. The amendment to the new rule has not been interpreted by any reported appellate decision as far as our research indicates except in Saks v. Jeanes Hospital, 268 Pa. Superior Ct. 578, 408 A. 2d 1153 (1979), wherein the court applied the discretionary rule allowing a court to allow a non-listed witness to testify under certain circumstances "since this case arose before the effective date of Pa.R.Civ.P., No. 4019(i)." We think the discretion allowed by the former rule has vanished.

## IV

Plaintiff next submits that we erred in allowing, over objection, the following testimony from defendant concerning plaintiff's passenger:

". . . he got out of the car with a can of beer, which proved to be a can of beer, in his hand and he stood there and relieved himself."

Plaintiff argues that the passenger's actions were irrelevant and prejudiced the jury against plaintiff.

Defendant contends that the jury had the right to consider the conduct of the passenger and what effect it had, if any, on the conduct of plaintiff in operating her vehicle.

We believe defense counsel made clear his trial theory that plaintiff may have been distracted by the uncomfortable and unpredictable position in which she was placed by the passenger's conduct.[4]

4. In referring to the passenger Altemose, plaintiff at trial said the following: "I was very upset at the time. I probably was

The account of the passenger's actions was certainly relevant to the issue created by that approach.

Further, we do not believe that any rational view of the evidence concerning the passenger's conduct could have impugned plaintiff. Hence, we find no merit in plaintiff's argument alleging prejudice.

## V

Plaintiff then says that we erred in allowing, over objection, the following cross-examination of plaintiff:

"Q. Mrs. Rimkus, if you were coming down Route 6, as you were, after you picked up Altemose, if you intended, if you intended, for whatever reason, to go back to Tunkhannock, was this area the first place that you could have pulled off to make that turn around?

A. Yes, if I had intended to go back to Tunkhannock."

At the time, at side bar, we noted a certain inconsistency in the direction of the questioning because of the obvious defense theory that plaintiff was anxious to rid herself of the passenger rather than return in the direction of Tunkhannock, retaining the passenger. However, defense counsel persuaded us that this inquiry was necessary to test credibility. Although we recognize that this argument may be a bit strained, we cannot see that any harm was done in view of the opportunity accorded plaintiff (of

thinking that I shouldn't have ever picked him up, 'cause I would have never pulled off to let him out."

We don't know, and it really was for the jury to determine, whether plaintiff's statement that she was "upset" was caused by the fact of the accident or by the passenger's conduct.

which she availed herself) to restate that she had no intention to reverse the direction of her vehicle.

## VI

Plaintiff next urges that we erred in refusing her counsel permission to conduct a demonstration with models to show the positioning of the vehicles involved in the accident in the above-captioned suit, their respective sizes, and alleged "line of vision."

Defense counsel made a timely objection, and we sustained because we could see no other result but unnecessary confusion concerning testimony on these subjects, which was clear, and from which the conflict comprising the jury issue had successfully emerged.

Even the dissent in Atene v. Lawrence, 456 Pa. 541, 318 A. 2d 695 (1974), would have banned use of models if jury-misleading or confusion would result.

## VII

Finally, plaintiff contends that we erred in charging the jury as follows:

"Now I realize that the accident in this instance did not occur, as far as the evidence in this case revealed, on the main-travelled portion of a highway. It is difficult from the evidence to ascertain just where the impact occurred, since no one really saw the impact as I understood the testimony, although it's your recollection that will govern. There is an apparent agreement that the accident occurred at some point in an area that was described as the berm or an open space or a lot, which was just off Route 6, at or near the present Route 6's intersection with what was referred to as old Route 6, a

road which Mr. Carney intended to take in order to get to his parking place for his vehicle and his home.

"Mrs. Rimkus, as I recall, although it is your recollection that governs, was in this particular spot, this berm or lot or open area, in an effort to discharge her hitchhiker/passenger. I think, however, provisions of the Motor Vehicle Code, which were in effect at the time of the accident may give you some help, and I'll quote two sections of the Motor Vehicle Code, and if you find that either party in this case violated either or both of these sections, you may use those sections, I charge you, as evidence of negligence. You are not required so to do, but they are some help, I believe, or may be of some help to you, even though, in effect, I am applying a rule-of-the-road to an accident which may have occurred just off the road.

". . .

"Now I would also charge you pertaining to a provision of the Motor Vehicle Code as to the duties of a driver of a vehicle on starting, stopping, turning, or entering a traffic stream, and this would apply to the duties of a driver of a vehicle in the position that Mrs. Rimkus found herself on the occasion of this accident. 'A driver of any vehicle upon a highway, before starting, stopping, turning from a direct lane, or entering the traffic stream from a parked position shall first see that such movement can be made with safety. Before making any such vehicle movement, the driver shall give a plainly visible signal in the manner prescribed in this section. The signal to indicate starting, turning, changing lanes, or entry into a traffic stream from a parked position shall be given by flashing front and rear signal lamps, or on the side towards which the turn or other vehicle movement is made.'

"I'm not certain how much help these two provisions of the Motor Vehicle Code are. They are, as far as I can determine, the only specific things that I can say to you with reference to rules gleaned from our statutes or the statute in effect at the time, that may have some help in order to determine, on your part, the standards to be applied toward these drivers. Essentially, however, ladies and gentlemen, your inquiry is to the conduct of each of these drivers, the manner in which they operated their vehicles, to determine whether or not they, either, or both of them, or neither of them, or one of them only, observed due care."

Our purpose in the charge, and we believe this evident, was to aid the jury in suggesting the nature of standards of conduct to give additional substance to the necessity of determining the due care to be expected of motorists in situations such as that in which the parties found themselves at the time of the accident.

We also charged the jury as to the Vehicle Code description of the duty of an operator of an overtaking vehicle, as was defendant.

The rationale of plaintiff in making this attack is her counsel's allegation that no testimony showed movement of plaintiff's vehicle just prior to impact. That may be a correct assessment of the direct evidence of plaintiff, but it is not true as to the impact of the circumstances which, if the defense was believed, allowed a conclusion that plaintiff turned her vehicle into the trailer. Further, defendant testified as to angled tracks from plaintiff's automobile.

We believed then, and still believe, the charge in this regard to have been proper.

We find no merit in plaintiff's motion.

## ORDER

And now, April 1, 1981, for the reasons set forth in the opinion of even date filed in the above-captioned matter, it is ordered that plaintiff's motion for new trial be and the same is hereby denied.