J-A23018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CRYSTAL L. BALKOVEC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HIDDEN VALLEY FOUR SEASONS RESORT | |
| Appellee | No. 1816 WDA 2015 |

Appeal from the Order Dated October 13, 2015
In the Court of Common Pleas of Somerset County
Civil Division at No: 471 CIVIL 2015

BEFORE:  LAZARUS, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 12, 2017**

Appellant Crystal L. Balkovec ("Balkovec") appeals from the October 13, 2015 order of the Court of Common Pleas of Somerset County ("trial court"), which sustained the preliminary objections of Appellee Hidden Valley Four Seasons Resort ("Four Seasons") and dismissed Balkovec's complaint. Upon review, we reverse and remand for further proceedings.

On August 5, 2015, Balkovec filed a complaint in negligence against Four Seasons, alleging that she visited a ski resort owned by Four Seasons on January 9, 2014.  Balkovec further alleged that prior to that day, she "had never previously snow skied."  Balkovec's Complaint, 8/5/15, at ¶ 19. Balkovec alleged that, upon completing six consecutive runs down the bunny

_____

[*] Retired Senior Judge assigned to the Superior Court.

slope, she successfully negotiated twice the next most difficult ski slope that Four Seasons had classified as "easy" and/or "for beginners." *Id.* at ¶ 20. Thereafter, Balkovec alleged that she attempted to tackle the next difficult slope, called the "Lower Continental," that Four Seasons also had classified as "easy" and/or "for beginners." *Id.* at ¶¶ 21-22. While on the Lower Continental attempting her first run, Balkovec alleged that she suffered an accident at approximately 12:45 p.m. *Id.* at ¶ 23. Specifically, Balkovec alleged that while skiing down the Lower Continental, which was lined with trees on the left-hand side, "she observed a large opening between the trees she was passing and the next set of trees further down the slope." *Id.* at ¶ 24. Balkovec alleged that, drawing upon her experience with the first two slopes that she had successfully completed, "it appeared to her that she was required to ski to her left through the opening between the trees in order to remain on that third ski slope." *Id.* at ¶ 25. She thus alleged that she

> was left to use her best judgment and essentially guess as to which way she should go, because [Four Seasons] had not erected any signage, fencing, barricades or warnings or otherwise made it clear as to which way the ski course was intended to go or that would have instructed skiers of all skill levels, but in particular novices and first-time skiers like [Balkovec], to not turn left . . ., but rather to continue straight down the slope.

*Id.* at ¶ 26. According to Balkovec's complaint,

> [a]lmost immediately after [she] successfully negotiated the left[-]hand turn between the two sets of trees, she encountered a large, open ditch underneath the ski lift. . . . As soon as [her] skis hit the . . . ditch, she went airborne approximately 10 – 15 feet down the slope and landed on her right hip and chest with her left leg twisted and pinned underneath her.

*Id.* at ¶¶ 27-28.  Balkovec sustained extensive injuries because of her fall.

*Id.* at ¶¶ 29-37.

Based on the foregoing allegations, Balkovec claimed that Four

Seasons was negligent, *inter alia*, in failing to:

> Make certain that [] skiers who[m] [Four Seasons] allowed to ski at its ski resort possessed all of the necessary knowledge, training and experience; post signs that would have warned skiers, including [Balkovec], that some of its ski courses were considered to be too dangerous for novices and first-timer skiers; restrict access to ski slopes that [Four Seasons] considered to be too dangerous for novices and first-time skiers; mark properly the course on which [Balkovec] was skiing [at] the time of her accident; [and] erect signage, fencing, barricades or warnings that would have indicated to [Balkovec] and other skiers that they should not turn left through the large opening in the two sets of trees that lined the left side of the slope[.]

*Id.* at ¶ 42.

On September 2, 2015, Four Seasons filed preliminary objections in

the nature of a demurrer, claiming that Balkovec was barred under the

Pennsylvania Skier's Responsibility Act (the "Act"), 42 Pa.C.S.A. § 7102(c),

because she had assumed the risk of downhill skiing.  Four Seasons argued

that Balkovec's veering off course through a gap in trees was a risk inherent

in the sport of downhill skiing.  On October 5, 2015, the trial court held a

hearing on Four Season's preliminary objections to Balkovec's complaint.  On

October 13, 2015, the trial court issued an order sustaining Four Seasons'

preliminary objections and dismissing Balkovec's negligence suit.  In a

memorandum accompanying the order, the trial court concluded that Four

Seasons did not owe Balkovec any duty and that Balkovec had assumed the

risk of downhill skiing that eventually resulted in her being injured. Specifically, the trial court reasoned:

> In the instant case we understand that [Balkovec], a novice skier, on her first run down an unfamiliar slope, chose to proceed through an opening between trees on the left side of the slope, which decision caused her to encounter terrain which was unsuitable for skiing. Regardless of experience or familiarity with a slope, an inherent risk of skiing is to encounter conditions unfavorable to skiing when because of obstructions (trees) blocking a clear view to the terrain ahead, one proceeds without being able to stop upon realizing the danger ahead. It is axiomatic that even a beginning skier anticipates the ski conditions and terrain ahead as an element of the sport of skiing, and when the skier is "guessing" as to what lies ahead he is no longer anticipating based on what he can clearly see ahead.
>
> Here, [Balkovec] could apparently not "see ahead" through the trees because she obviously left the trail without knowing where she was going and could not stop in time to avoid that which was obviously there. An inherent risk of downhill skiing is that one will be injured while blindly pursuing a course down the slope without seeing a suitable slope ahead. Indeed, beginning skiers often stop part of the way down a slope because they DO see ahead and anticipate their ability to stop or stay in control based on their ability.
>
> . . . [U]nder the facts as pled, [Four Seasons] was under no duty to [Balkovec] because the risk of being injured from blindly pursuing a downhill course into unknown terrain was a risk inherent in the sport of downhill skiing.

Trial Court Memorandum, 10/13/15, at 4 (emphasis in original).

Balkovec timely appealed to this Court. Following her filing of a Pa.R.A.P. 1925(b) statement of errors complained of appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion, wherein it adopted its October 13, 2015 memorandum.

On appeal, Balkovec raises three issues for our review, reproduced verbatim here:

> [I.] Did the [t]rial [c]ourt commit an error of law and/or a clear abuse of discretion by considering matters outside the scope of

the pleadings and assuming facts which did not appear anywhere in [Balkovec's c]omplaint in sustaining [Four Season's] [p]reliminary [o]bjections?

[II.] Did the [t]rial [c]ourt commit an error or law and/or a clear abuse of discretion by failing to afford [Balkovec] an opportunity to amend her [c]omplaint and engage in discovery?

[III.] Did the [t]rial [c]ourt commit an error or law and/or a clear abuse of discretion by failing to consider case law cited by [Balkovec] in her [b]rief in [o]pposition to [Four Season's] [p]reliminary [o]bjections which established that the aforementioned issues constitute questions of fact that a jury must decide?

Balkovec's Brief at 9.

We review a trial court's order sustaining preliminary objections for an error of law and apply the same standard as the trial court. ***Richmond v. McHale***, 35 A.3d 779, 783 (Pa. Super. 2012) (quotation omitted).

> A preliminary objection in the nature of a demurrer is properly [sustained] where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.
>
> Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

***Hill v. Slippery Rock Univ.***, 138 A.3d 673, 676–77 (Pa. Super. 2016).

We first address Balkovec's third issue, because we deem it to be dispositive of the appeal. Balkovec argues that the trial court erred in sustaining Four Seasons' preliminary objections because, based on the complaint, it is unclear whether the gap in the trees was an inherent risk of downhill skiing or a design defect. We agree.

The Act provides:

**(c) Downhill skiing.--**

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (a.1).

42 Pa.C.S.A. § 7102(c).[1] As the foregoing indicates, the Act explicitly preserved the common law assumption of risk defense as applied to injuries suffered while engaged in downhill skiing. ***Chepkevich***, 2 A.3d at 1185. Our Supreme Court in ***Chepkevich*** explained:

Because the Act did not create a new or special defense for the exclusive use of ski resorts, but instead kept in place

---

[1] The doctrine of assumption of risk largely has been superseded by the doctrine of comparative negligence as set forth in 42 Pa.C.S.A. § 7102(a)-(b). The General Assembly, however, in Section 7102(c), specifically has retained the doctrine of assumption of risk with respect to the sport of downhill skiing. ***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1176 n.3 (Pa. 2010).

longstanding principles of common law, a review of those principles is instructive. The assumption of the risk defense, as applied to sports and places of amusement, has also been described as a "no-duty" rule, *i.e.*, as the principle that an owner or operator of a place of amusement has no duty to protect the user from any hazards inherent in the activity. *See* RESTATEMENT (SECOND) OF TORTS, § 496A, CMTT c, 2 (where plaintiff has entered voluntarily into some relation with defendant which he knows to involve the risk, he is regarded as tacitly or impliedly agreeing to relieve defendant of responsibility, and to take his own chances); *Hughes* [*v. Seven Springs Farm, Inc.*]*,* 762 A.2d [339, ] 343–44 [(Pa. 2000)] (citing *Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546 ([Pa.] 1978)). Our decision in *Hughes* made clear that this "no-duty" rule applies to the operators of ski resorts, so that ski resorts have no duty to protect skiers from risks that are "common, frequent, and expected," and thus "inherent" to the sport of downhill skiing. Where there is no duty, there can be no negligence, and thus when inherent risks are involved, negligence principles are irrelevant—the Comparative Negligence Act is inapplicable—and there can be no recovery based on allegations of negligence. *See*, *e.g.*, *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166 ([Pa.] 2000) (primary element in any negligence cause of action is that defendant owes a duty of care to plaintiff).

*Chepkevich*, 2 A.3d at 1186.

In *Hughes*, our Supreme Court set forth a two-part test to determine whether a skier assumed the risk of a particular injury. A court first must determine whether a person "was engaged in the sport of downhill skiing at the time of her injury," and second whether the injury occurred as a result of a risk inherent in the sport of skiing. *Hughes*, 762 A.2d at 344. As stated, to determine whether a risk is inherent to the sport of downhill skiing, a court must assess whether it is "common, frequent[,] and expected." *Id.*; *see Jones*, 394 A.2d at 551 (noting where the risk is "common, frequent[,] and expected" in the sport of downhill skiing, no duty is owed).

Additionally, the Court in *Hughes* observed:

> Obviously, the *sport* of downhill skiing encompasses more than merely skiing down a hill. It includes those other activities directly and necessarily incident to the act of downhill skiing. Such activities include boarding the ski lift, riding the lift up the mountain, alighting from the lift, skiing from the lift to the trail and, after a run is completed, skiing towards the ski lift to start another run or skiing toward the base lodge or other facility at the end of the day.

*Id.* (emphasis added). Thus, the **Hughes** Court declined to interpret the Act, "as well as the sport of downhill skiing, in an extremely narrow, hypertechnical and unrealistic manner." *Id.* Indeed, the **Chepkevich** Court cautioned that "[i]t would frustrate the purpose of the Act were [the Court] to hold that it mandates a broad reading of the 'sport of skiing,' but simultaneously requires a narrow definition of what risks are 'inherent' to that sport." **Chepkevich**, 2 A.3d at 1188.

Instantly, based upon our review of Balkovec's complaint, we are unable to agree with the trial court's disposition of Four Seasons' preliminary objections to Balkovec's complaint. As we recounted above, Balkovec alleged that she encountered a large gap between the trees while on the Lower Continental. She seemingly was confused as to the direction of the slope. Balkovec alleged that "it appeared to her that she was required to ski to her left through the opening between the trees in order to remain on" the slope. Balkovec's Complaint, 8/5/15, at ¶ 25. She veered left based on her best judgment arrived at in the absence of any signage, fencing, barricades or warnings by Four Seasons alerting skiers, especially first-time skiers like her, to proceed straight down the slope. *Id.* at ¶ 26.

Balkovec's complaint, on its face, raises sufficient issues of fact that preclude dismissal of her action at this juncture. Specifically, it is unclear from the complaint whether Balkovec alleges that the gap between the trees was a risk inherent to the sport of downhill skiing or possibly a defect in the design of the slope not inherent in the sport.[2] In other words, it is unclear whether a risk inherent in the sport of downhill skiing caused her accident and the resulting injuries. Accordingly, we are constrained to conclude that the trial court erred in sustaining Four Seasons' preliminary objections to Balkovec's complaint.[3, 4]

Order reversed. Case remanded. Jurisdiction relinquished.

_____

[2] Although Balkovec does not use the term "design defect," a complete reading of her complaint strongly indicates that she challenged the design of the slope with respect to lack of signage, fencing, barricades or warnings.

[3] We express no opinion as to the merits of Balkovec's action. Our decision today holds only that it cannot be determined with any certainty on preliminary objections that Balkovec's cause of action is barred by the assumption of risk doctrine as applied to downhill skiing.

[4] Because we dispose of the case based on Balkovec's third issue, we need not discuss her remaining issues. We, however, note that the trial court's findings that (1) a "beginning skier anticipates the ski conditions and terrain," (2) Balkovec "obviously left the trail without knowing where she was going," and (3) "beginning skiers often stop part of the way down a slope because they DO see ahead" are outside the averments in the complaint and therefore not properly for consideration on preliminary objections in the nature of a demurrer.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017