

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2008

# Bjorgung v. Whitetail Resort

Precedential or Non-Precedential: Precedential

Docket No. 07-4148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Bjorgung v. Whitetail Resort" (2008). *2008 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4148

ANDERS ELLIS BJORGUNG,
Appellant

v.

WHITETAIL RESORT, LP,
WHITETAIL SKI COMPANY, INC., and
U.S. SKI & SNOWBOARD ASSOCIATION

Appeal of a Decision of the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-02114)
Chief District Judge: Yvette Kane

Submitted under Third Circuit L.A.R. 34.1(a)
October 24, 2008

Before: RENDELL and SMITH, *Circuit Judges*,
and POLLAK, *District Judge*.*

---

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

(Filed: December 16, 2008)

Nathaniel H. Speights, Esq.
Speights & Mitchell
2600 Virginia Avenue N.W.
Suite 105
Washington, D.C. 20037-1916
*Counsel for Appellant*

Hugh M. Emory, Esq.
Ryan, Emory & Ryan
37 North Valley Road
Suite 105
Station Square Three
Paoli, PA 19301
*Counsel for Appellee*

---

OPINION OF THE COURT
_____

POLLAK, *District Judge*.

In this appeal, we review issues arising from a series of summary judgment motions filed in a personal injury action. First, we will address whether the District Court erred in denying the plaintiff's request for leave to amend his complaint, a decision that resulted in one grant of summary judgment to the defendants. Next, we will address plaintiff's challenge to the grant of summary judgment to the defendants under Pennsylvania tort law. Lastly, we will review the

District Court's decision to deny, as moot, motions for summary judgment filed by the defendants and a third-party defendant based on releases signed by the plaintiff and his father.

We affirm both grants of summary judgment as well as the disposition on the final set of motions.

## I.     Background and procedural history

On February 10, 2001, Anders Ellis Bjorgung competed in a giant slalom race at Whitetail Ski Area in Franklin County, Pennsylvania, as a member of the Ski Liberty Race Club. The race was sponsored by the U.S. Ski & Snowboard Association (USSSA), which obtained signed liability releases from both Bjorgung and his father as a condition of his participation. Bjorgung was seventeen years old at the time, an expert skier and an experienced downhill competitor. However, during his run, Bjorgung failed to negotiate one of the turns, delineated by racing gates, and skied into the woods where he struck a tree and was injured. While Bjorgung cannot recollect any of the events of the race day, he and his father both stated that his normal practice was to inspect a race course before competing.

On November 21, 2003, Bjorgung, a citizen of Maryland, brought suit in diversity for his injuries in the United States District Court for the Middle District of Pennsylvania against USSSA, a Utah corporation, and two other business entities – Whitetail Resort, LP, registered in Delaware, and Whitetail Ski Company, Inc., a Pennsylvania

3

corporation. Bjorgung alleged in his complaint that the defendants were negligent in designing and maintaining the ski trail and race course. On January 20, 2004, all three defendants filed an answer. Whitetail Resort and Whitetail Ski Company denied that they owned the ski area on the date of Bjorgung's injuries. On January 23, 2004, USSSA, pursuant to Fed. R. Civ. P. 14, filed a third-party complaint against Bjorgung's father seeking indemnity based on the release he signed. In October 2006,[1] the case was referred to Magistrate Judge Smyser for pre-trial management and discovery.

In February 2007, the two Whitetail defendants moved for partial summary judgment based on their denial of ownership, and all three defendants filed a motion for summary judgment based on Pennsylvania's "Skier's Responsibility Act" and a separate motion based on "hold harmless" releases signed by the Bjorgungs. Also in February, Bjorgung's father moved for summary judgment on the third-party complaint against him. On June 19, 2007, the plaintiff filed his response to the first motion for summary judgment; the response included a request for leave to amend his complaint to name the proper owner of the resort.

---

[1] While it does not bear on any of the issues presented by this appeal, we note that on December 1, 2004, Chief Judge Kane dismissed the suit due to failure by plaintiff's counsel to follow court orders. Bjorgung appealed, and this court reversed and remanded for further proceedings. *See Bjorgung v. Whitetail Resort*, 197 Fed.Appx. 124 (3d Cir. 2006).

Magistrate Judge Smyser submitted his report and recommendation on all the motions to Chief Judge Kane on July 17, 2007. Chief Judge Kane adopted these recommendations, following her de novo review, and granted summary judgment to Whitetail Resorts and Whitetail Ski Co., finding they did not own the ski area at the time of the accident. The judge also granted summary judgment to all three defendants on the issue of tort liability. Lastly, Chief Judge Kane denied as moot both the defendants' summary judgment motion based on the releases and Bjorgung's father's motion for summary judgment to dismiss the third party complaint.

## II.  Denial of leave to amend the complaint

The mountain resort where Bjorgung crashed had been sold in 1999, two years before Bjorgung's accident, to Snow Time, Inc., which operated it through a wholly-owned subsidiary, Whitetail Mountain Operating Corp. Accordingly, the former owners, Whitetail Resort and Whitetail Ski Company, named as defendants by Bjorgung, moved for summary judgment and the District Court granted it. In doing so, the District Court also denied plaintiff's motion to amend his complaint, in order to name the proper defendants, under Fed. R. Civ. P. 15. Plaintiff appeals this procedural denial.

The version of Rule 15 applicable to this case[2] stated that, beyond the time for amendment as of right at the start of a lawsuit, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2007). The Third Circuit reviews a district court decision refusing leave to amend under Rule 15(a) for abuse of discretion.[3] *Cureton v. Nat'l Collegiate Athl. Ass'n.*, 252 F.3d 267, 272 (3d Cir. 2001). District courts are the experts in the field of applied trial procedure, so appellate courts should not be quick to reverse such decisions. That said, we also have acknowledged that the liberal pleading philosophy of the federal rules does limit a district court's discretion to deny leave to amend. *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984). Delay alone will not constitute grounds for denial. *Cureton*, 252 F.3d at 273. The district court has discretion to deny the request only if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. *Adams*, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. *Cureton*, 252 F.3d at 273 (citing *Adams*, 739 F.2d at 868; *Lorenz v. CSX Corp.*, 1 F.3d

---

2 Rule 15 underwent changes in organization effective December 1, 2007. While these changes would not alter the outcome of this case, we note that the District Court quite properly applied the previous version of the rule.

3 Bjorgung appears to argue, incorrectly, that this issue is subject to *de novo* review.

6

1406, 1414 (3d Cir. 1993)). Thus, our review of the question of undue delay in this appeal will "focus on the movant's reasons for not amending sooner," *Cureton*, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988).

Finally, as we proceed in this review, we defer to the District Court's findings of fact which may underlie its decision – including findings of the Magistrate Judge adopted by the District Court following its de novo review – unless we find clear error. *Cf. Morales v. Sun Contractors*, 541 F.3d 218, 221 (3d Cir. 2008). We note, however, that the appellant does not appear to challenge any of the District Court's factual findings on this issue. He does seem to read the District Court record differently than the District Court does – a matter we will address below.

The District Court found that the defendants alerted Bjorgung to the fact that he was suing the wrong entities in early 2004, and that he delayed three and one half years before seeking leave to amend.[4] Memorandum Opinion of Sept. 28, 2008 at 7. The District Court also stated that

---

4 In his brief to this court, the plaintiff states, incorrectly and without explanation of the statement's import, that the District Court was not notified of the sale of the ski mountain until February 2007. In fact, the District Court was on notice when the defendants filed their answer in early 2004. The important fact, however, is that Bjorgung was on notice of the need to amend in 2004.

Bjorgung did nothing about the problem with his complaint, despite being on notice for this length of time, until he filed a response to the defendants' motion for summary judgment. *Id*. First, we find that these circumstances represent "previous opportunities to amend" under *Cureton*. Second, while Chief Judge Kane did not say so expressly, we read her observation that the motion to amend was filed "long after the close of discovery" as referring, *inter alia*, to the burden tardily placed on the District Court.

Bjorgung had a straightforward, but very necessary, job to do. He had to correct his complaint and begin to sue the proper entities. The defendants placed him immediately on notice of his error. And yet he waited over three years and allowed the District Court to reach the brink of ruling dispositively on the entire suit before he undertook to fulfill his responsibility. To allow amendment at that point might send the court through a substantial period of additional discovery and motions. We find a considerable potential burden in this, one that would warrant denial of leave to amend under Rule 15 and *Cureton* unless Bjorgung produced a persuasive explanation for his delay.

Bjorgung offered no excuse or explanation to the District Court for his delay, nor does he offer any reason for it on appeal. Instead, he propounds an argument that the District Court was barred under Pennsylvania law, and hence under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), from denying him leave to amend. Bjorgung claims that defendants' lack of compliance with Commonwealth business law, specifically the registration provisions of 15 Pa. C.S.A.

§§ 108 and 8506,[5] caused him to sue the wrong entities because he had no official notice of the change in ownership. He then argues that the District Court, as the result of defendants' alleged noncompliance, was required to permit him to amend, even at the eleventh hour. He cites treatises and case law that he claims establish the proposition that a business entity's failure to adhere to these rules should, in no event, confer a benefit on it in the course of litigation. The District Court found these arguments unpersuasive. For the reasons that follow, we agree.

Assuming *arguendo* that defendants failed to register correctly,[6] it is not apparent why a state law infraction of this sort should keep a federal court from applying the federal rules of procedure under these facts. The treatises and the

---

5 Title 15 is Pennsylvania's "Corporations and Unincorporated Associations" code. Section 108 of the title sets Commonwealth requirements for a change in location or status of the registered agent of a business association. Section 8506 sets Commonwealth requirements for a limited partnership to maintain, or note a change to, its registered office.

6 Whether the defendants have failed to comply with certain requirements of Pennsylvania's business law is not a matter that this court need determine. We note, however, that the defendants contend that they followed all required Commonwealth procedures.

1959 federal case Bjorgung cites[7] all suggest that unregistered movement by a business defendant should not result in prejudice to a plaintiff suing that defendant entity. For example, if the plaintiff serves the defendant corporation at an old address, that defendant cannot successfully move to dismiss for improper service of process if it has failed to register a change of address. This, in fact, is the specific prohibition enforced by *Wentling v. Popular Science Publ'g Co.*, 176 F. Supp. 652, 660 (M.D. Pa. 1959), cited by Bjorgung. Such a rule ensures fairness for the unsuspecting plaintiff who comports himself properly and should not pay a price for the procedural omissions of the defendant.

The situation here, however, is quite different from *Wentling*. The defendants did not seek any unforeseen advantage, through federal civil procedure, out of their alleged failure to follow the Commonwealth's registration procedure. Nor did Bjorgung follow the federal rules promptly and appropriately. Instead, the defendants informed the plaintiff immediately that he needed to change his complaint, the plaintiff did not respond, and, now, it is the plaintiff who seeks an unintended advantage for having failed to act in a timely fashion. These do not strike us as appropriate circumstances for application, or extension, of the *Wentling* rule.

---

7 Plaintiff cites to *Summary of Pennsylvania Jurisprudence* § 5.55 (2d Ed. 2001) and *Standard Pennsylvania Practice* § 2180(a) (2d Ed. 1997) as well as *Wentling v. Popular Science Publ'g Co.*, 176 F. Supp. 652, 660 (M.D. Pa. 1959).

10

In light of the lack of proper justification for delay, and the guidance of *Adams* and *Cureton*, we find that the District Court did not abuse its discretion by denying the plaintiff's request to amend under Rule 15. Accordingly, the District Court's grant of summary judgment to Whitetail Resort and Whitetail Ski Company was proper.

## III.    Assumption of the risk

The District Court also granted summary judgment to all three defendants because it found, as a matter of law, that Bjorgung assumed the risk of his injuries, thus releasing the defendants from any duty of care to him. Plaintiff argues that outstanding issues of material fact existed, precluding summary judgment. Bjorgung also argues that the District Court made an error in its application of Pennsylvania tort law concerning skiing accidents.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The district court must view the facts in the light most favorable to the non-moving party, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000), but "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As our review of a grant of summary judgment is plenary, we operate under the same

11

legal standards as the District Court. *Boyle v. Cty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

Pennsylvania applies the comparative negligence doctrine to most tort claims, but its legislature specifically retained the defense of assumption of the risk for suits concerning injuries from the sport of downhill skiing. 42 Pa. C.S.A. § 7102(c). The Pennsylvania Supreme Court has interpreted this "Skier's Responsibility Act" to mean that, as a matter of law, a ski resort owes no duty of care to a skier for any of the "inherent risks" of downhill skiing. *Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 344 (Pa. 2000) (holding that the owner of a recreation ski area bears no liability to a skier who is struck on the mountain by another skier). The court suggested in dicta, however, that the owner of such a facility is not relieved of its duty to protect patrons from foreseeably dangerous conditions not inherent to the activity. *Id.* (quoting *Jones v. Three Rivers Management Corp.*, 394 A.2d 546, 551 (Pa. 1978)). The Superior Court found cause to apply this as a holding in *Crews v. Seven Springs Mountain Resort*, 874 A.2d 100, 105 (Pa. Super. 2005), where it ruled that a skier does not assume an "inherent risk" of being struck on the slopes by an intoxicated teenager. The Superior Court went on to define an inherent risk as "one that cannot be removed without altering the fundamental nature of skiing." *Id*.

Plaintiff first argues that his ability as a minor to appreciate the risks he faced on the day of his injury remains an outstanding factual issue that must go to a jury before the court can consider whether 42 Pa. C.S.A. § 7102(c) and

12

*Hughes* apply. We disagree. Pennsylvania courts apply a subjective standard, "concerning only what a *particular* minor plaintiff knows, sees, hears, comprehends, and appreciates," to young people who allegedly assume a risk of injury. *Berman v. Phila. Bd. of Ed.*, 456 A.2d 545, 550 (Pa. 1983) (emphasis in original). We find that the record evidence fully supported the District Court's conclusion on this issue. Bjorgung was an expert skier and a highly-experienced ski racer. Both he and his father stated that it was Bjorgung's responsibility and regular practice to inspect any course where he planned to race. Lastly, Bjorgung knew empirically and from USSSA literature that ski racing was dangerous and involved multiple hazards. Plaintiff alleges a factual dispute here, but scrutiny of the record, even in the light most favorable to Bjorgung as required under summary judgment review, does not raise more than his bare allegation.

The plaintiff then argues that the defendants' motion for summary judgment should have failed under 42 Pa. C.S.A. § 7102(c) and *Crews,* 874 A.2d at 105, because dangerous conditions on the race course rendered the risks faced by Bjorgung "not inherent" in the sport of skiing. We have plenary review of this question of state law. *High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991). Plaintiff enumerates four such conditions: lack of safety netting; course plotting that directed skiers toward the left side of the trail; improper placement of a course gate; and soft, loose snow "outside the chemically treated part of the course." Appellant's Brief at 23. The last condition clearly falls under the basic rule of *Hughes*, 762 A.2d at 344, as a risk inherent in the sport of skiing. The other three simply do not suggest application of

13

the *Crews* rule because they also appear altogether inherent in the activity undertaken by the plaintiff. The cognizable risks inherent in ski racing are legion. They certainly would include a failure by staff of a ski resort to (1) set netting in all spots where it might prove necessary, and (2) fix a race course in a way that minimizes the potential for the competitors to lose control. To decide otherwise would nullify 42 Pa. C.S.A. § 7102(c) in the context of competitive skiing and replace it with a negligence standard. Accordingly, we will affirm the District Court's grant of summary judgment on the issue of plaintiff's assumption of the risk.

## IV.     District Court's denial of the remaining motions

The District Court denied as moot two additional motions for summary judgment. The first motion, filed by all three defendants, was based on the USSSA releases signed by both Bjorgung and his father. The second motion was filed by Bjorgung's father who sought summary judgment on the third-party complaint against him. We agree that these motions were rendered moot by the District Court's ruling that plaintiff assumed the risk and that the defendants owed Bjorgung no duty of care.

14