**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2223
_____

STEPHEN OMOGBEHIN,
Appellant

v.

MARIA CINO, Acting Secretary,
Department of Transportation
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:06-cv-4581)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 19, 2012

Before: AMBRO, and VANASKIE and VAN ANTWERPEN, *Circuit Judges*

(Filed: June 20, 2012)
_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant Stephen Omogbehin ("Omogbehin") filed suit against the Secretary of

the Department of Transportation ("the Secretary") alleging race and national origin

discrimination in violation of Title VII. Appellant appeals from the jury verdict entered

against him in the District Court. Omogbehin claims that the District Court erred in (1) denying his motion for spoliation sanctions, (2) partially granting the Secretary's motion for summary judgment, and (3) denying his motion to amend his complaint. We will affirm.

## I.

Omogbehin is an African male who was born in Nigeria and immigrated to the United States. He was hired on September 7, 2003 by the Federal Aviation Administration ("FAA") as an IT Operations Manager at the FAA Tech Center in Pomona, New Jersey. His employment was subject to a one-year probationary period in which he could be terminated without appeal rights to the Merit System Protection Board.

Omogbehin was employed by the FAA for roughly eight months before his employment was terminated on April 23, 2004. Shelley Yak ("Yak") was the IT Division Manager who hired, and fired, Omogbehin. According to Yak, by April 2004 it had become clear that Omogbehin could not meet the expectations attached to his management position. She provided four examples of his inadequacies as a manager: (1) walking out of business meetings,[1] (2) threatening an employee with insubordination in an email where coworkers were copied,[2] (3) disobeying an instruction not to create team

---

[1] Yak declared that two of these incidents occurred, one on December 11, 2003, and one on February 12, 2004. Yak met with Omogbehin after the first incident and discussed a more appropriate managerial reaction.

[2] Omogbehin stated in an email he would "consider [it] an act of insubordination" if the subordinate employee did not include two other employees in addressing an issue. Several other employees, including Yak, were included on the email. Yak told Omogbehin to never address an employee's performance via emails with other coworkers.

lead positions,[3] and (4) failing to produce a satisfactory Network Operating System evaluation report.[4]

Yak first met with Thomas Christian ("Christian"), a Labor Relations specialist, to discuss Omogbehin's subpar performance and proposed termination on March 16, 2004. She emailed a draft letter of termination, containing the four reasons set forth above, to Christian on April 4, 2004. Multiple draft termination letters were exchanged between Yak and Christian over the next several days. When the time came, on April 23, 2004, to terminate Omogbehin, Christian was unavailable, so he assigned another Labor Relations specialist, Al Cannizzaro ("Cannizzaro"), to assist Yak. Omogbehin was terminated that day and provided a termination letter that differed from the previous drafts Yak had prepared in that it did not list specific reasons for the termination. Yak declared that she revised the letter and removed the reasons because she had been informed by Human Resources that she did not need to provide reasons for terminating a probationary employee.

Omogbehin filed an equal employment opportunity complaint, but was denied relief in his administrative hearing. Thereafter, he filed a complaint in the District Court

---

[3] Yak had denied requests by Omogbehin to create team leads on multiple occasions, and then learned that Omogbehin was using the term "team coordinator." Yak met with Omogbehin and told him that creating the positions violated her previous instructions, and instructed him to eliminate the positions immediately.

[4] Omogbehin's group was to prepare a report evaluating the two computer operating systems used by the FAA. He was to recommend one of the two systems, but his report was deemed deficient by Yak. Even after Yak notified Omogbehin of this, and gave time for revisions, the draft was still deficient and Yak had to become involved with further revisions to get it ready in time for the deadline.

seeking relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). After a ten-day trial, the jury entered a verdict in favor of the Secretary.

The trial and the jury verdict are not issues in this appeal. Omogbehin focuses instead on three pretrial motions. First, Omogbehin filed a Motion for Spoliation Sanctions, seeking an adverse inference jury instruction. The basis of this was the litigation-hold letter he sent to the Secretary on April 27, 2004. Omogbehin requested preservation of all data, including back-up tapes, from September 10, 2003 through April 27, 2004, without deletions or tampering. The Secretary produced the information,[5] but it did not contain certain emails that Omogbehin believed were created between April 23 and 27, 2004. Omogbehin thus argued that the Secretary intentionally destroyed or suppressed relevant emails and voicemails created during this time.

The Magistrate Judge denied Omogbehin's motion, as well as his motion for reconsideration, because Omogbehin had failed to show that the emails were actually sent or received. Yak and Cannizzaro each declared that they did not send or receive any emails regarding the firing during this time. Cleve Laswell ("Laswell") and Gary Albert ("Albert"), who were each employed in the IT department at the FAA Tech Center, declared that all emails sent in the relevant time period for the relevant employees were produced. Omogbehin, by contrast, produced no evidence to show that the emails existed, or that any spoliation occurred, let alone was done intentionally. Omogbehin appealed the order to the District Court, which reviewed it pursuant to 28 U.S.C. §

---

[5] The Secretary did not provide the back-up tapes, but restored all information from the relevant information systems and provided it to Omogbehin.

4

636(b)(1)(A). The District Court affirmed the Magistrate Judge, concluding that Omogbehin had not satisfied his burden of establishing facts from which the court could "at least infer that the evidence existed in the first place."

Second, the District Court granted the Secretary's motion for summary judgment only to the extent it was brought on non-Title VII grounds. Omogbehin alleged in his complaint that he was retaliated against for helping an employee, Margie Lattanzie-Baird, seek an accommodation request for her alleged disability. The District Court granted the Secretary's motion for summary judgment to the extent Omogbehin's retaliation claim was based on this activity. As the District Court noted, Title VII does not prohibit disability discrimination and related retaliation, and Omogbehin only brought his claim under Title VII and not the civil rights statutes that address disability discrimination.

Third and finally, Omogbehin focuses on the District Court's decision to deny his Motion to Amend the Complaint. On January 12, 2011, just six days[6] before the trial was scheduled to begin, Omogbehin filed his motion seeking to add a claim for retaliatory discharge under the Rehabilitation Act of 1973, 29 U.S.C. § 791, et. seq. The District Court denied the motion because Omogbehin "had ample opportunity to amend" prior to that time, and because his delay in moving was undue.

**II.**

---

[6] Trial was scheduled to begin on Tuesday, January 18, 2011. Omogbehin filed his Motion to Amend at 11:04 p.m on Wednesday, January 12. The District Court denied the motion on Thursday, January 13, and noted that because the court was closed for the Martin Luther King, Jr. holiday on Monday, January 17, the trial was set to commence in only two court days.

The District Court had jurisdiction under 28 U.S.C. § 1331; we exercise jurisdiction under 28 U.S.C. § 1291. We apply an abuse of discretion standard to the District Court's denial of Omogbehin's Motion for Spoliation Sanctions, *In re Hechinger Inv. Co. of Delaware Inc.*, 489 F.3d 568, 574 (3d Cir. 2007), as well as to its denial of his Motion to Amend the Complaint, *Estate of Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010). "[A] district court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010) (citation omitted). We exercise plenary review over the District Court's decision to partially grant summary judgment. *Shook v. Avaya, Inc.*, 625 F.3d 69, 72 (3d Cir. 2010).

## III.

We turn now to the claims asserted by Omogbehin in his appeal. For the reasons discussed below, we will affirm the District Court in all respects.

## A.

Generally, spoliation refers to situations where a party has altered, destroyed, or failed to produce evidence "relevant to an issue in a case." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). "Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73. The spoliation

6

analysis is separate from any analysis regarding spoliation sanctions. *Id*. at 73, n.5 ("Though there is some overlap between the two, there are distinctive elements of each."). An adverse inference, which Omogbehin sought, does not arise "when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer*, 72 F.3d at 334. Rather, "it must appear that there has been an actual suppression or withholding of the evidence." *Id*.

The District Court did not abuse its discretion in concluding that Omogbehin failed to satisfy his burden of establishing the four required elements. Omogbehin provided no evidence below, and none in this appeal, that the emails he seeks existed. Indeed the evidence and declarations provided by the Secretary indicate otherwise. Yak and Cannizzaro each stated in their declarations that no emails of the type Omogbehin seeks were created. The declarations of the employees responsible for producing the information, Laswell and Albert, each state that all emails for the dates sought were restored via the Lotus Notes system and produced during discovery.

It also follows from the declarations made by Laswell and Albert that Omogbehin failed to establish that the Secretary actually suppressed or withheld the information. The Secretary produced the information and documents that Omogbehin requested; that they did not contain what he had hoped or expected is not sufficient to satisfy his burden. He must provide some proof that what he seeks actually existed, but failed to do so. As a result, the District Court did not abuse its discretion in denying Omogbehin's motion.

**B.**

7

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[7] The Secretary argues that any assistance provided by Omogbehin to Lattanzie-Baird did not constitute protected activity under Title VII as a matter of law.

In addition to prohibiting discrimination based upon enumerated characteristics, Title VII prohibits retaliation[8] for opposing discrimination related to those characteristics. *See* 42 U.S.C. § 2000e-3(a)(1) ("It shall be unlawful employment practice . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice *by this subchapter* or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter*." (emphases added)). A Title VII retaliation claim must thus be based upon discrimination made unlawful by Title VII. *See Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266–67 (3d Cir. 2006) ("The phrase 'this subchapter' refers specifically to 42 U.S.C. §§ 2000e through 2000e-17, the provisions that set forth an employee's rights when an employer has discriminated against him or her on the basis of

---

[7] To survive a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We grant all reasonable inferences from the evidence to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[8] To prevail on a retaliation claim, a plaintiff must prove that "(1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

8

race, color, sex, religion, or national origin. It follows that a charge 'under this subchapter' is a charge that alleges discrimination on the basis of those prohibited grounds."). Title VII does not address discrimination based upon disabilities.

In this case, Omogbehin asserts that he was retaliated against for "his active assistance to a subordinate employee . . . in her disability claim." To the extent that Lattanzie-Baird suffered from unlawful employment practices relating to her disability, her claim would not have been related to Title VII discrimination. As a result, Omogbehin was not opposing a practice made unlawful by Title VII. Omogbehin admits in his brief that he "did not identify the correct jurisdictional statute in his complaint." As a matter of law, any actions he undertook regarding the disability discrimination related to Lattanzie-Baird are not protected actions under Title VII. Accordingly, the District Court correctly granted the Secretary's motion for summary judgment on this ground.

## C.

Under Federal Rule of Civil Procedure 15(a)(2), a district court "should freely give leave [to amend the complaint] when justice so requires." A court may deny a motion to amend the complaint in certain circumstances. "Delay alone will not constitute grounds for denial." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) If the delay is "'undue, motivated by bad faith, or prejudicial to the opposing party,'" however, it is an appropriate grounds for denying the motion. *Estate of Oliva*, 604 F.3d at 803 (quoting *Bjorgung*, 50 F.3d at 266). Delay in seeking leave to amend is undue if it places an "unwarranted burden on the court or when the plaintiff has had previous

9

opportunities to amend." *Id.* Whether the opponent suffered prejudice, or would have suffered prejudice, from the delay is not dispositive. *See id.* ("Irrespective of whether Appellees would have suffered prejudice from [Appellant's] late assertion of a First Amendment claim, [Appellant's] delay in seeking leave to amend was undue."). Therefore, "our review of the question of undue delay in this appeal will focus on the movant's reasons for not amending sooner, and we will balance these reasons against the burden of delay on the District Court." *Bjourgung*, 550 F.3d at 266 (internal citation and quotation omitted).

Here, the Secretary raised the lack of a Rehabilitation Act claim in its motion for summary judgment, which was filed on November 24, 2009. Then, on June 28, 2010, the District Court specifically mentioned the absence of the claim in its summary judgment opinion. Yet, Omogbehin did not move to amend his complaint in response to either. Omogbehin has not provided any justification for his delay in seeking leave to amend.[9] A burden on the District Court existed; trial was scheduled to start only two court days after Omogbehin filed his motion. This burden outweighs Omogbehin's non-existent reasons for failing to amend sooner. For that reason the District Court did not abuse its discretion in finding that Omogbehin's "delay in moving to amend, until the eve of trial, [was] undue."

**IV.**

---

[9] The sole argument Omogbehin presents on appeal is that the Defendant did not demonstrate prejudice from the late filing of the motion. As established in *Estate of Olivia*, prejudice is not required for a district court to deny a motion to amend the complaint. *Estate of Oliva*, 604 F.3d at 803.

10

For the foregoing reasons, we will affirm the District Court's rulings on the pretrial motions as well as the jury's verdict.