**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-2270

UNITED STATES FIRE INSURANCE CO.

v.

KELMAN BOTTLES, KELMAN GLASS

v.

CONTINENTAL CASUALTY CO.

Kelman Bottles, LLC, Kelman Glass, LLC,
                                                      Appellants

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 2-11-cv-00891)
District Judge:  Honorable Arthur J. Schwab

Argued on March 5, 2013

Before:  SCIRICA, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: September 23, 2013)

Michael Conley, Esquire (**Argued**)
Meghan K. Finnerty, Esq.
Offit Kurman
1801 Market Street
Ten Penn Center, Suite 2300
Philadelphia, PA 19103

James C. Martin, Esq.
Traci S. Rea, Esq.
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
            *Counsel for Appellants*


Christopher P. Leise, Esq. **(Argued)**
Katrina D. Gibson, Esq.
Nancy L. Siegel, Esq.
White & Williams
457 Haddonfield Road
Suite 400, Liberty View
Cherry Hill, NJ 08002
            *Counsel for Appellee United States Fire Insurance Co*


Paul K. Geer, Esq. **(Argued)**
Tara L. Maczuzak, Esq.
DiBella, Geer, McAllister & Best, P.C.
20 Stanwix Street, 11th Floor
Pittsburgh, PA 15222
            *Counsel for Appellee Continental Casualty Co*

_____


O P I N I O N

_____


**ROTH**, <u>Circuit Judge</u>:

In this insurance coverage dispute, Kelman Bottles, LLC, and Kelman Glass, LLC, (collectively, Kelman) appeal (1) the District Court's April 5, 2012, order granting summary judgment in favor of United States Fire Insurance Company (US Fire) and Continental Casualty Company (Continental) and (2) the District Court's March 1, 2012, order denying Kelman's motion for leave to add a bad faith claim against Continental. For the reasons that follow, we will (1) reverse the District Court's April 5, 2012, order

granting summary judgment in favor of US Fire and Continental on Kelman's breach of contract claims, (2) affirm the District Court's April 5, 2012, order granting summary judgment in favor of US Fire on Kelman's bad faith claim, and (3) reverse the District Court's March 1, 2012, order denying Kelman's motion to amend its complaint against Continental.

I.      **Factual Background**

A.      **Kelman's Furnace and the March 15, 2011, Incident**

The glass melting furnace at the Kelman factory typically contained about 220 tons of molten glass stored at temperatures of 2300 to 2800 degrees farenheit.  On March 15, 2011, at about 4:15 p.m., the north side of the furnace began to leak.  The leak rapidly turned into a catastrophic event, spewing molten glass for several hours.  The leak caused severe damage to the furnace and other equipment at the plant.

At the time of the incident, the furnace had been in operation for about five years of its ten-year lifespan.  Prior to March 15, 2011, Kelman had experienced at least two other leaks in the furnace, although none was as severe.  Kelman's furnace manager, Doug Hilliard, had expressed concerns about the condition of the furnace after leaks in April 2009 and June 2010.  In May 2009, Kelman hired a consultant to evaluate the status and stability of the furnace.  The consultant recommended several repairs.  Kelman performed most of the repairs but declined to undertake some repairs that it claimed were not done in the industry and might cause the furnace to wear out faster.   There is evidence in the record that all glass melting furnaces leak occasionally because their

3

design requires gaps to accommodate the large expansions and contractions associated with the high temperature of the molten glass.

### B.      The Insurance Policies

Kelman purchased two insurance policies to cover risks associated with the furnace: (1) an "All Risk" policy with US Fire, and (2) an "Equipment Breakdown" policy with Continental. Kelman's "All Risk" policy with US Fire provided coverage for any "Covered Causes of Loss," which coverage was defined as "Risks of Direct Physical Loss unless the loss is . . . excluded in Section B." The policy also contained an additional section titled "Additional Coverage Extensions," which provided coverage for, among other things, loss or damage from "covered water or other liquid, powder or molten material damage loss." The policy did not state whether "loss or damage" in the Additional Coverage Extensions had the same meaning as "Covered Causes of Loss."

Kelman's "Equipment Breakdown" policy with Continental provided coverage for any "'Breakdown' to 'Covered Equipment.'" The policy defined "Breakdown" as a "sudden and accidental direct physical loss to 'Covered Equipment' . . .." The policy's definition of "Covered Equipment" included "furnaces, ovens and kilns."

### C.      Rejection of Kelman's Insurance Claims by US Fire and Continental

After the March 15, 2011, incident, Kelman filed claims with both US Fire and Continental. On June 30, 2011, US Fire denied coverage to Kelman based on the policy's Inherent Vice Exclusion, Wear and Tear Exclusion, and Design Defect Exclusion. US Fire also reserved the right to deny coverage if the loss was not a

4

fortuitous event and noted that the loss might also be excluded under the Maintenance Exclusion or the Mechanical Breakdown Exclusion.

Continental denied Kelman's claim on June 14, 2011, on the grounds that a "Breakdown" did not occur within the definition of Kelman's policy. However, a report prepared by Continental during the course of its investigation noted that David Bizzak, an engineer hired by Continental to evaluate the cause of the incident, relayed to a Continental investigator that "based on the facts as described to him this was definitely an occurrence that was sudden and accidental."[1] Additionally, a Continental subrogation specialist noted in the claim file on April 12, 2011: "Reviewed file notes and engineer report. Loss was deemed sudden and accidental."

## II. Procedural History

On July 6, 2011, US Fire filed an action seeking a declaratory judgment that it had no obligation to insure Kelman for the damages and losses suffered in the March 15, 2011, incident. On August 23, 2011, Kelman filed a counterclaim asserting breach of contract and bad faith against US Fire. On October 10, 2011, Kelman filed a Joinder Complaint against Continental asserting a breach of contract claim. On February 21, 2012—eleven days after the close of discovery and nine days before summary judgment motions were due—Kelman filed a motion to amend its claims against Continental to include a count of bad faith. The District Court denied the motion on March 1, 2012.

---

[1] Bizzak later testified that he would not have used those words, but, in any event, "it was a leak that was out of the realm of the normal."

5

Both US Fire and Continental filed summary judgment motions, arguing that Kelman was not entitled to coverage under their respective policies and thus they did not breach their contracts with Kelman. US Fire's summary judgment motion also requested dismissal of Kelman's bad faith counterclaim. Kelman filed a cross-motion for summary judgment asserting that both US Fire and Continental were liable under their respective policies. On April 5, 2012, the District Court granted the motions of US Fire and Continental and denied Kelman's cross-motion.

## III.    Discussion[2]

"We review the District Court's grant of summary judgment *de novo*, applying the same standard the District Court applied. Summary judgment is appropriate where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law." *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2002) (citations omitted).

Kelman argues on appeal that the District Court erred by (1) granting summary judgment for US Fire and Continental on Kelman's breach of contract claims, (2) granting summary judgment for US Fire on Kelman's bad faith claim, and (3) denying Kelman's motion for leave to amend the third party complaint against Continental to assert a claim of bad faith.

### A.    Breach of Contract Claims Against US Fire and Continental

#### 1.    Breach of Contract Claim Against US Fire

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

The District Court granted summary judgment for US Fire on the grounds that (1) the loss in question fell under the Inherent Vice Exclusion, and (2) because the loss in question fell under the Inherent Vice Exclusion, it also was not covered under the Additional Coverage Extensions. Kelman argues that the District Court erred in granting summary judgment for US Fire on these grounds. We agree.

### a. Inherent Vice Exclusion

The Inherent Vice Exclusion in the US Fire policy reads in pertinent part:

> B. Exclusions
>
>         \*            \*            \*
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>         \*            \*            \*
>
> > d. (2) Rust, corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself.

The District Court found that the loss in question fell under the Inherent Vice Exclusion because the court identified the leaking of molten glass as the cause of the March 15, 2011, loss. However, the leaking of molten glass is a common and natural occurrence in glass melting furnaces. A catastrophic leak is not. The March 15, 2011, loss was not due to the expected occasional leaking of molten glass but to the catastrophic leak of large amounts of molten glass. Thus, the District Court erred in its conclusion that "because the loss sustained by Kelman occurred as result of molten glass escaping the furnace, and because Kelman admitted that molten glass was an inherent risk to operating the furnace, the loss falls within U.S. Fire's inherent risk exclusion."

7

This conclusion, under which any leak of molten glass would call for application of the Inherent Vice Exclusion, is too broad.

Moreover, a glass furnace's susceptibility to leaks is not the type of loss causation that should invoke the Inherent Vice Exclusion. Even if the leaking of molten glass caused the loss, under this Court's precedent, the loss still would not fall under the Inherent Vice Exclusion. In *GTE Corp. v. Allendale Mutual Ins. Co.*, we defined inherent vice as:

> . . . [A] cause of loss . . . [that] does not relate to an extraneous cause but to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. . . . In other words, the question is whether the insured property . . . contain[s] its own seeds of destruction . . . [or] was threatened by an outside natural force.

372 F.3d 598, 611 (3d Cir. 2004) (internal quotation marks and citations omitted). In that case, we held that the Year 2000 (Y2K)-related data recognition problem in GTE Corporation's computer systems constituted an inherent vice because the systems contained their own 'seeds of destruction'—the two-digit date limitation, which precluded the systems from functioning properly on or after January 1, 2000. *Id*. Here, in contrast, the furnace's susceptibility to leaks did not preclude it from functioning properly. In fact, it is undisputed that leaks of molten glass from glass melting furnaces are common and natural; with proper maintenance and operation, a glass melting furnace will operate without incident, even with occasional leaks. Therefore, the leaking of molten glass, unlike the GTE computer systems' two-digit date limitation, is not a "seed of destruction" but part of the furnace's normal functioning. It is not an inherent vice.

8

Summary judgment on this ground was inappropriate.[3] We will reverse the order granting summary judgment to US Fire on the breach of contract claim and remand the case to the District Court to grant judgment in favor of Kelman on the Inherent Vice Exclusion and to take further proceedings in regard to the other grounds for judgment asserted by US Fire.

### b. Additional Coverage Extensions

The District Court held that the loss did not fall under the Additional Coverage Extensions because the policy unambiguously established that any loss that falls under an exclusion is not covered under the Additional Coverage Extensions. Because we conclude that the Inherent Vice Exclusion does not apply here, there is at this point no bar to applying the Additional Coverage Extensions. However, we do note that our review convinces us that the District Court may have erred in precluding an excluded loss from being covered by the Additional Coverage Extensions. When an insurance policy contains general coverage provisions as well as a special coverage provision contained in an endorsement, it does not necessarily follow that the provisions of the main policy govern the endorsement. An endorsement to a policy may in fact provide coverage that is excluded by the language of the main policy. In this type of situation, we have held that "[i]f there is a conflict between the terms of an endorsement and those in the body of the

---

[3] US Fire additionally asserted that the loss is excluded under the Wear and Tear, Corrosion and Deterioration Exclusion, Faulty, Inadequate or Defective Maintenance Exclusion, and Inadequate or Defective Design Exclusion and that the loss is not covered because it was not fortuitous. Because the District Court decided the case on the Inherent Vice Exclusion, it did not go on to consider these other Exclusions. It may do so on remand.

9

main policy, then the endorsement prevails, particularly when it favors the insured." *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981);[4] *see also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 691 (W.D. Pa. 2008).

The endorsement in question here is the Additional Coverage Extensions which provide in pertinent part:

> F. Additional Coverage Extensions
> \*　　　　\*　　　　\*
> 2. Water Damage, Other Liquids, Powder or Molten Material Damage
> If loss or damage caused by or resulting from *covered water or other liquid, powder or molten material* damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which . . . the substance escapes.

(emphasis added).[5]  The District Court reasoned that a "covered . . . molten material damage loss" under the Additional Coverage Extensions must fall within the policy's definition for "Covered Causes of Loss."  This is not an accurate reading of the policy. In dropping the "water or other liquid, powder or" language between "covered" and "molten material," the District Court gave an unjustifiably expansive modifying power to the word "covered."  The more reasonable interpretation is that "covered" does not modify "molten material" but modifies only "water" because "covered" is next to "water," and "or" is used twice, along with a comma, in the phrase to separate the other elements ("or other liquid, powder or molten material") from "water."  *See* Antonin

---

[4] We note that neither party cited this case in its briefing of this appeal.
[5] The record reflects that US Fire was given consideration for the Additional Coverage Extensions, and therefore the Additional Coverage Extensions qualify as an endorsement.

10

Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 153 (2012) ("When syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

The importance of expressing whether or not "water" damage is "covered" can be seen from the fact that only certain types of water damage are covered by the policy. In the "Exclusions" Section B.1.g., it is specified that "water" damage loss caused by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, mudslide, mudflow, water overflow from a sewer, drain, or sump, etc., is not covered. Because of the extensive range of "not covered" water losses, it makes sense that the drafter of the Additional Coverage Extensions language wanted to expressly limit recovery for water damage under the Additional Coverage Extensions to "covered" water damage.

In addition, there is no indication that "loss" in the Additional Coverage Extensions is the same as "loss" as defined in "Covered Causes of Loss." It is not clear whether the loss in question must fall within the definition of "Covered Causes of Loss," as the District Court held, or if *any* type of loss or damage is sufficient to trigger the Additional Coverage Extensions. Indeed, the fact that the Additional Coverage Extensions simply states "loss or damage" rather than "Covered Causes of Loss" suggests that the Additional Coverage Extensions contemplate insurance coverage for a broader category of losses than the defined term of "Covered Causes of Loss."

2.     **Breach of Contract Claim Against Continental**

11

Kelman also argues that the District Court erred in granting summary judgment for Continental on the breach of contract claim. Because we find that there is an issue of material fact regarding whether the loss was covered under Continental's "Equipment Breakdown" policy, we hold that the District Court erred in granting summary judgment.

Under Continental's "Equipment Breakdown" policy, Kelman is entitled to coverage when a breakdown in its equipment occurs. The policy defines "Breakdown" as "sudden and accidental direct physical loss to 'Covered Equipment.'"[6] Consistent with other cases applying Pennsylvania law, the District Court interpreted "sudden" and "accidental" as meaning, respectively, "abrupt" and "unexpected or unintended." *See, e.g.*, *Cyclops Corp. v. Home Ins. Co.*, 352 F. Supp. 931, 934-37 (W.D. Pa. 1973); *Lower Paxton Twp. v. U.S. Fire & Guar. Co.*, 557 A.2d 393, 397-98 (Pa. Super. 1989). Because the District Court found that Kelman expected leaks to occur, the District Court held that the loss in question was not "sudden and accidental" and thus was not covered under Continental's "Equipment Breakdown" policy.

The District Court's reasoning is erroneous. Despite recognizing that the relevant question is whether the nature of the loss, and not its underlying cause, was "sudden and accidental," the District Court based its holding on a finding that Kelman expected the leaks. However, whether or not a leak—allegedly the cause of the loss—was expected is not indicative of whether the loss was "sudden and accidental." Thus, the District Court's grant of summary judgment on the grounds that the loss was expected cannot be sustained.

---

[6] The parties do not dispute that the furnace qualified as "Covered Equipment."

12

Furthermore, there exist material issues of fact as to whether the loss here was "sudden and accidental." The District Court held that Kelman expected the incident to occur based on the previous leaks that had occurred in the furnace and the furnace manager's statements expressing concern about the risk of another leak occurring. In so holding, the District Court overlooked two critical points. First, there are factual issues that remain as to exactly what Kelman expected. The furnace manager's concerns about potential leaks appear to have been about a part of the furnace different from the location of the leak on March 15, 2011. Further, while Kelman admitted that leaks in the furnace would happen, the anticipated severity of those leaks is in dispute. Thus, at the very least, there are factual issues as to what risks of loss and damage Kelman expected.

Second, Kelman proffered evidence suggesting that the March 15, 2011, incident was, in fact, "sudden and accidental." Reports from Continental state that "this was definitely an occurrence that was sudden and accidental." Continental argues that this evidence is not trustworthy, but, at a minimum, viewing this evidence in the light most favorable to Kelman, it is sufficient to show that there is a material issue of fact as to whether the incident was sudden and accidental.

Consequently, we will reverse the District Court's entry of summary judgment for US Fire on the breach of contract claim and remand for further proceedings.

**B.    Kelman's Bad Faith Claim Against US Fire**

Kelman also argues that the District Court erred in granting summary judgment for US Fire on Kelman's bad faith claim. We disagree. Under Pennsylvania law, an insured may recover damages against an insurer if the insurer has acted in bad faith. To prevail

13

on a bad faith claim, the insured must prove two elements: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (applying Pennsylvania law) (citation omitted). "Although the insurer's conduct need not be fraudulent, mere negligence or bad judgment is not bad faith." *Id.* (internal quotation marks and citation omitted). The insured must prove bad faith by clear and convincing evidence, and "the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Id.* (internal quotation marks and citation omitted). This heightened evidentiary standard requires "evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012).

Kelman brings four allegations of bad faith against US Fire: (1) US Fire deliberately ignored facts that supported Kelman's claim of coverage; (2) US Fire refused to evaluate coverage under the appropriate policy provisions; (3) US Fire refused to reevaluate its position after facts favorable to Kelman's position emerged; and (4) US Fire's conduct during the litigation forced Kelman to exhaust its financial resources. The District Court held that Kelman's success on the first and second allegations of bad faith was contingent on the outcome of the breach of contract claim against US Fire. Consequently, because US Fire prevailed on the contract issue, Kelman's first two bad

14

faith allegations necessarily failed. As to the third basis, the District Court held that Kelman proffered insufficient evidence to support its claim. Finally, the District Court held that Kelman's fourth basis was not actionable under Pennsylvania law.

Notwithstanding our reversal of summary judgment on Kelman's breach of contract claim, we will affirm the District Court's grant of summary judgment for US Fire on Kelman's bad faith claim because Kelman cannot show clear and convincing evidence of bad faith for any of its four allegations of bad faith. Kelman points to US Fire's invocation of several exclusions when it denied Kelman's claim—including the "Wear and Tear, Corrosion and Deterioration Exclusion," "Faulty, Inadequate or Defective Maintenance Exclusion," and "Inadequate or Defective Design Exclusion." Kelman then asserts that several of US Fire's experts conceded that their study of the furnace and the March 15, 2011, incident suggested that those exclusions did not apply.[7] Without more, this proffer would not allow a jury to conclude by clear and convincing evidence that US Fire's denial of the claim was unreasonable or that US Fire knew or recklessly disregarded its lack of a reasonable basis to deny the claim. *See, e.g.*, *Post*, 691 F.3d at 525 (affirming grant of summary judgment to insurer where insured failed to present clear and convincing evidence of bad faith). The fatal defect in Kelman's claim is that it relies on the absence of evidence of good faith rather than clear and convincing evidence of bad faith. Consequently, we will affirm the District Court's grant of summary judgment to US Fire on Kelman's bad faith claim.

---

[7] Kelman also asserts that US Fire ignored notice from Kelman that its furnace had been rebuilt between late 2003 and early 2004. It is not clear how or why this fact affects the bad faith analysis.

15

## C. Denial of Motion for Leave to Amend Kelman's Third Party Complaint Against Continental

Finally, Kelman argues that the District Court erred in denying its motion for leave to amend its third party complaint against Continental. We agree.

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). However, a district court may deny leave to amend a complaint where it is apparent from the record that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). We review a district court's denial of leave to amend for abuse of discretion. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

Kelman moved for leave to amend its complaint to add a bad faith claim after Continental's corporate designee's February 2, 2012, deposition. Kelman asserts that it learned at that time that Continental had, among other things, misrepresented in its April 11, 2011, May 6, 2011, and June 9, 2011, letters that it was investigating Kelman's claim when in fact it did no investigation into the claim between March 24, 2011 and June 24, 2011. The District Court denied Kelman's motion on the grounds that (1) Kelman demonstrated undue delay in filing this motion on February 21, 2012 because Kelman received all of the information relevant to Continental's investigation in December 2011 when Continental produced its entire claim file pursuant Federal Rule of Civil Procedure 26; (2) allowing the amendment would prejudice Continental because it would require

16

discovery, which had closed on February 10, 2012, to be re-opened; and (3) the amendment would be likely be futile.

We hold that the District Court abused its discretion in denying Kelman's motion for leave to amend. First, Kelman did not demonstrate undue delay in filing the motion on February 21, 2012: although Kelman had previously obtained Continental's claim file, Kelman did not learn until February 2, 2012, that Continental falsely stated in its April 11, 2011, May 6, 2011, and June 9, 2011, letters that it was investigating Kelman's claim. Thus, Kelman was not aware of key facts underlying its bad faith claim until weeks before it filed the motion for leave to amend. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay . . . requires that we focus on the [party's] motives for not amending their complaint to assert this claim earlier . . ..").

Second, we are not convinced that allowing the amendment would be substantially prejudicial to Continental: Continental asserts generally that it would need additional discovery but does not identify any specific depositions or evidence that it would need to defend this claim. *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d. Cir. 1989) ("This Court has interpreted these factors to emphasize that prejudice to the non-moving party is the touchstone for denial of the amendment. But the non-moving party must do more than merely claim prejudice.") (internal quotation marks and citations omitted).

Third, the District Court, in finding that the amendment would be futile, failed to establish that the complaint as amended would fail to state a claim upon which relief could be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d

17

Cir. 1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

For these reasons, we hold that the District Court abused its discretion in denying Kelman's motion for leave to amend its complaint against Continental.

## IV.    Conclusion

For the foregoing reasons, we will reverse the District Court's April 5, 2012, order granting summary judgment in favor of US Fire on the Inherent Vice Exclusion and remand for further proceedings on the breach of contract claim.  We will reverse the District Court's April 5, 2012, order, granting summary judgment in favor of Continental and remand for further proceedings.  We will affirm the District Court's grant of summary judgment in favor of US Fire on Kelman's bad faith claim.  We will reverse the District Court's March 1, 2012, order denying Kelman's motion to amend its complaint against Continental and remand for further proceedings.