**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1070
_____

KATHERINE BIRL, AS PARENT AND NATURAL GUARDIAN OF G.B., A MINOR
AND IN HER OWN RIGHT; DAMIAN BIRL, AS PARENT AND NATURAL
GUARDIAN OF G.B., A MINOR AND IN HIS OWN RIGHT,
Appellants

v.

SKI SHAWNEE, INC.
_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(No. 3:22-cv-01598)
Magistrate Judge:  Hon. Daryl F. Bloom

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 10, 2025.


Before: RESTREPO, McKEE, and AMBRO, *Circuit Judges.*

(Opinion Filed: January 2, 2026)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

Appellants, the parents and natural guardians of G.B., appeal the District Court's order granting summary judgment to Ski Shawnee, concerning injuries suffered by their minor son. We will affirm.

## I.[1]

Following injuries sustained while snowboarding, Appellants sued Ski Shawnee, who moved for summary judgment, arguing that the claim was barred under the Pennsylvania Skier Responsibility Act, 42 Pa. Cons. Stat. § 7102(c) ("PSRA").[2] The District Court granted the motion, finding that the risks involved in Appellants' claim were inherent to the sport of snowboarding and thus barred by the PSRA.[3] This appeal followed.

## II.[4]

We exercise plenary review over the District Court's grant of summary judgment. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020) (citation modified). Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We must view the facts and evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving

---

[1] As we write for the benefit of the parties, who are familiar with the background of this case, we set out only the facts and procedural history necessary for the discussion that follows.

[2] **JA59**

[3] **JA14–16; Appellee Br. 5.**

[4] The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

party." *Id.* at 248. The "mere existence" of some alleged doubt as to the material facts will not overcome summary judgment. *Id.* at 247–48. Because this action is based on diversity jurisdiction, we apply Pennsylvania law. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) ("A federal court sitting in diversity must apply state substantive law and federal procedural law.").

The District Court did not err in finding that the PSRA barred the Appellants' claim. The enactment of the PSRA preserved the assumption of risk defense for suits that arise from a skiing injury. 42 Pa. Cons. Stat. § 7102(c). The Pennsylvania Supreme Court determined that under the PSRA, a ski resort has no duty to protect skiers from risks that are "inherent" to the sport of downhill skiing. *Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 344 (Pa. 2000) (finding that being struck by another skier was an inherent risk to the sport of downhill skiing). Inherent risks are "common, frequent, and expected." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1186 (Pa. 2010) (holding that falling from a ski lift was an inherent risk). To determine whether the PSRA bars a claim, the Pennsylvania Supreme Court developed a two-part test. *Hughes*, 762 A.2d at 344. We must determine if (1) the plaintiff was engaged in the sport of downhill skiing, and (2) the injury arose from an inherent risk to the sport of skiing. *Id.* The Pennsylvania Supreme Court has suggested that the "no-duty" rule would not include risks that are "foreseeably dangerous conditions not inherent" to the activity. *Id.* at 343–44 (quoting *Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546, 551 (Pa. 1978)).

As to the first part of the test, the parties agree that because G.B. was snowboarding, he was engaged in the sport of downhill skiing.[5] We now proceed to the second part: whether the injury was a result of an inherent risk to the sport of downhill skiing.

Appellants argue that if a ski resort deviates from established industry standards when designing a jump, the defective design is not an inherent risk to the sport of skiing.[6] They allege that Ski Shawnee deviated from established industry standards by failing to consult with the National Ski Area Association ("NSAA") Freestyle Terrain Resource Guide ("Guide") when designing their terrain park.[7] The Guide recommends that terrain park jumps include ample run-out space to "allow[] users opportunity to regain composure and balance after utilizing the feature."[8] However, Appellants' argument cannot overcome our decision in *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263 (3d Cir. 2008).

The circumstances present in this case and *Bjorgung* are decidedly similar. In *Bjorgung*, the plaintiff argued that the "dangerous conditions of the race course rendered the risks faced by [him] 'not inherent' in the sport of skiing." *Bjorgung*, 550 F.3d at 269 (citation modified). In that case, the plaintiff asserted several conditions that were not inherent risks: "lack of safety netting; course plotting that directed skiers toward the left

---

[5] **Appellee Br. 20.**

[6] **Appellant Br. 30.** The Plaintiffs rely on *Jones v. Three Rivers Management Corp.*, 394 A.2d 546, 551 (Pa. 1978). *Jones* involved a baseball spectator's injury and did not concern the PSRA. However, the Pennsylvania Supreme Court discussed *Jones* while developing the doctrine of "inherent risk" under the PSRA and stated, "Jones could proceed with her case because the injury she suffered from the batted ball in an interior concourse was not an inherent feature of the spectator sport of baseball but, instead, resulted from the particular architectural design of the facility." *Hughes*, 762 A.2d at 344.

[7] **Appellant Br. 35–36.**

[8] JA281.

side of the trail; [and] improper placement of a course gate." *Id.* In *Bjorgung*, we concluded that a ski resort had no duty to "fix a race course in a way that minimizes the potential for the competitors to lose control." *Id.* Here, Appellants also argue that the design of a jump directed G.B. off-trail and "caused [him] to lose control. . . and violently crash."[9] But according to *Bjorgung*, a ski resort has no duty to place a jump "in a way that minimizes the potential for [snowboarders] to lose control." *Bjorgung*, 550 F.3d at 269. Because the risk was inherent to the activity, the District Court did not err in concluding that the PSRA barred Appellants' claim. *See Hughes*, 762 A.2d at 344–45.

## III.

For the foregoing reasons, we affirm the District Court's order.

---

[9] Appellant Br. 32.